## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO,
## WESTERN DIVISION

**PLINIO ALVARADO QUINONEZ,**

      **Plaintiff,**

     **vs.**                                     **Case No. 3:21-cv-159**

**IMI MATERIAL HANDLING LOGISTICS INC.,**     **JUDGE** _____
a Nevada for-profit corporation,

**JOHN DOE 1,**
individually and as a representative
of IMI Material Handling Logistics Inc.,

**JOHN DOE 2,**
individually and as a representative
of IMI Material Handling Logistics Inc.,

**DEMATIC CORP.,**                              **JURY TRIAL DEMANDED**
a Delaware for-profit corporation,

**JOHN DOE 3,**
individually and as a representative
of Dematic Corp.,

**JOHN DOE 4,**
individually and as a representative
of Dematic Corp.,

**CLAYCO, INC.,**
a Missouri for-profit corporation,

**JOHN DOE 5,**
individually and as a representative
of Clayco, Inc.,

**CROCS, INC.,**
a Delaware for-profit corporation,

**NP DAYTON BUILDING IV, LLC,**
a Missouri limited liability company,

**NPD MANAGEMENT, LLC,**
a Missouri limited liability company,

**NORTHPOINT DEVELOPMENT, LLC,**
a Missouri limited liability company,

**LAPORTE CONSULTANTS CORP.,**
a Delaware for-profit corporation,

**JOHN DOE 6,**
individually and as a representative
of Laporte Consultants Corp.,

**SERGIO ROMERO,**
individually and as a representative
of Dematic Corp.,

**LORENZO AVILA,**
individually and as a representative
of Dematic Corp.,

**JUSTIN PARSONS,**
individually and as a representative
of Dematic Corp.

**JOHN DOE 7**,
unknown.

        **Defendants.**

## PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plinio Alvarado Quinonez is a citizen and resident of the State of California who was brought to Ohio by Defendant IMI Material Handling Logistics Inc. and Defendant Dematic Corp. to provide temporary labor for a warehouse project ("the Crocs Project") located at 10391 Dog Leg Road, Vandalia, Montgomery County, Ohio 45377-7500. On June 17, 2019, Plaintiff was working on an elevated platform approximately 12.5' feet off the ground when he fell from said

platform to the concrete floor below. Prior to the fall Plaintiff was not provided with any fall arrest equipment.

A non-exhaustive list of Plaintiff's injuries from the fall include the following: a traumatic subarachnoid hemorrhage; a traumatic hemorrhage of the cerebrum with a loss of consciousness of unknown duration; a traumatic subdural hematoma; a right comminuted maxillary sinus fracture; a mildly displaced nasal septum fracture; right orbital floor lamina papyracea fracture; right orbital wall fracture; left comminuted maxillary sinus fracture; open fracture of the frontal bone; left orbital wall fracture; a non-displaced zygomatic arch fracture; and bilateral, minimally displaced Le Fort fractures of the pterygoid plates.

The United States Department of Labor, through the Occupational Safety and Health Administration, conducted an investigation of the fall and made several findings against Defendant Dematic Corp. Defendant Dematic Corp. was initially issued four citations for violations of the Code of Federal Regulation standards: 1) 29 C.F.R. 1926.501(b)(1) (duty to have fall protection for unprotected sides and edges more than six (6) feet above the next lower level); 2) 29 C.F.R. 1926.502(a)(1) (failure to comply with required fall protection systems); 3) 29 C.F.R. 1926.503(a)(2)(iii) (training on the use and operation of guardrail systems, personal fall arrest systems, safety net systems, etc.); and 4) 29 C.F.R. 1926.503(a)(2)(viii) (failure to adhere to training standards). Those violations were issued on October 25, 2019 and resolved through informal settlement on December 13, 2019.

At the time of the incident, the property in question was owned and controlled by Defendant NP Dayton Building IV, LLC for the benefit of Defendant Crocs, Inc. On January 23, 2019, the City of Dayton (Ohio) executed a Quit Claim Deed that conveyed the Dog Leg Road property to Defendant NP Dayton Building IV, LLC. On March 5, 2019, Defendant NP Dayton Building IV,

LLC filed a Notice of Commencement in the Montgomery County Recorder's Office indicating that Clayco, Inc., as original contractor, was about to begin construction on the Crocs Project. Throughout the spring and into summer 2019, Defendant NP Dayton Building IV, LLC prepared the property for occupation by Defendant Crocs, Inc. and, on November 6, 2019, Defendant Crocs Inc. celebrated the opening of their new North American distribution center at the property with a ribbon cutting ceremony.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332.    Supplemental jurisdiction over pendant state law claims is proper pursuant to 28 U.S.C. § 1367 and common law.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because substantially all of the events that give rise to the claims in this action occurred in Montgomery County, Ohio and said county is situated within the bounds of this Court's geographic area of responsibility.

## THE PARTIES

3.      Plaintiff Plinio Alvarado Quinonez ("Plaintiff" or "Mr. Alvarado Quinonez") is, and was at all times relevant hereto, a resident of the State of California.

4.      Defendant IMI Material Handling Logistics Inc. ("Defendant IMI") is a Nevada for-profit corporation with its principal place of business at 561 Keystone Avenue, Suite 850, Reno, Nevada 89503.  Upon information and belief, Defendant IMI is duly registered with the Ohio Secretary of State as a foreign corporation.

5.      Defendant John Doe 1 ("Doe 1") was employed by Defendant IMI as a site supervisor on the Crocs Project.

6.     Defendant John Doe 2 ("Doe 2") was employed by Defendant IMI as a site supervisor on the Crocs Project.

7.     Defendant Dematic Corporation ("Defendant Dematic") is a Delaware for-profit corporation with its principal place of business at 507 Plymouth Avenue NE, Grand Rapids, MI 49505.   Upon information and belief, Defendant Dematic is duly registered with the Ohio Secretary of State as a foreign corporation.

8.     Defendant John Doe 3 ("Doe 3') was employed by Defendant Dematic as a site supervisor on the Crocs Project.

9.     Defendant John Doe 4 ("Doe 4") was employed by Defendant Dematic as a site supervisor on the Crocs Project.

10.     Defendant Sergio Romero ("Romero") was employed by Defendant Dematic as the Mechanical Installation Site Supervisor on the Crocs Project.

11.     Defendant Lorenzo Avila ("Avila") was employed by Defendant Dematic as the Mechanical Foreman on the Crocs Project.

12.     Defendant Justin Parsons ("Parsons") was employed by Defendant Dematic as the Electrical Site Supervisor/Electrical Foreman on the Crocs Project.

13.     Defendant Laporte Consultants Corp. ("Defendant Laporte") is Delaware for-profit corporation with its principal place of business at 200 N. Warner Road, Suite 201, King of Prussia, PA 19406.   It is believed that Defendant Laporte served as the project manager for the Crocs project. Upon information and belief, Defendant Laporte is not registered with the Ohio Secretary of State as a foreign corporation.

14.     Defendant John Doe 6 ("Doe 6") was employed by Defendant Laporte as a project manager and site supervisor on the Crocs Project.

15. Defendant Clayco, Inc. ("Defendant Clayco") is a Missouri for-profit corporation with its principal place of business at 2199 Innerbelt Business Center Drive, St. Louis, MO 63114. Upon information and belief, Defendant Clayco is not registered with the Ohio Secretary of State as a foreign corporation.

16. Defendant John Doe 5 ("Doe 5") was employed by Defendant Clayco as a site supervisor on the Crocs Project.

17. Defendant Crocs, Inc. ("Defendant Crocs") is a Delaware for-profit corporation with its principal place of business at 6103 Monarch Park Place, Niwot, CO 80503. Upon information and belief, Defendant Crocs, is duly registered with the Ohio Secretary of State as a foreign corporation.

18. Defendant NP Dayton Building IV, LLC ("Defendant NP Dayton") is a Missouri limited liability company with its principal place of business at 4825 NW 41st Street, Suite 500, Riverside, Missouri 64150. Upon information and belief, Defendant NP Dayton is duly registered with the Ohio Secretary of State as a foreign corporation.

19. Defendant NPD Management, LLC ("Defendant NPD") is a Missouri limited liability company with its principal place of business at 4825 NW 41st Street, Suite 500, Riverside, Missouri 64150. Upon information and belief, Defendant NPD is not registered with the Ohio Secretary of State as a foreign corporation.

20. Defendant Northpoint Development, LLC ("Defendant Northpoint") is a Missouri limited liability company with its principal place of business at 4825 NW 41st Street, Suite 500, Riverside, Missouri 64150. Upon information and belief, Defendant Northpoint is not registered with the Ohio Secretary of State as a foreign corporation.

21. Defendant John Doe 7 ("Defendant Doe #7) is unknown.

## FACTUAL ALLEGATIONS

22.    Upon information and belief, the City of Dayton, ("the City of Dayton") and Defendant NP Dayton entered into a Tax Increment Financing Agreement on January 23, 2019.

23.    In February 2019, Defendant Crocs announced that it was moving from Ontario, California to a build-to-suit facility near the Dayton International Airport.

24.    That facility is located at 10391 Dog Leg Road, Vandalia, Montgomery County, Ohio 45377-7500.

25.    Publicly, it was stated that Defendant Northpoint was constructing the 555,000 square foot facility.

26.    It is further believed that Defendant NP Dayton is a subsidiary of and/or managed by Defendant NPD, which is itself a subsidiary of and/or managed by Defendant Northpoint.

27.    The public was also informed that the project was contingent upon the approval of both local and state incentives.

28.    Through a series of interconnected property transactions, lease agreements, and financing arrangements in early 2019, Defendant NP Dayton began construction on the Crocs Project.

29.    The property records from the Montgomery County, Ohio Recorder's Office show that the property was conveyed from the City of Dayton to Defendant NP Dayton via a Quit Claim Deed on January 23, 2019.

30.    Defendant NP Dayton employed Defendant Clayco as the general contractor on the construction project.

31.     Defendant Dematic, upon information and belief, specializes in warehouse and distribution facility design and implementation and was selected by Defendant Clayco to work on the construction project and to complete the build-to-suit process for Defendant Crocs.

32.     Defendant Dematic, upon further information and belief, contracted with Defendant IMI to provide laborers for the project.

33.     Defendant IMI hired Mr. Alvarado Quinonez and brought him from California to Ohio specifically to work on this project.

34.     Defendant Clayco, Defendant Dematic, Defendant Laporte, and Defendant IMI all undertook and shared responsibility for the safety of Mr. Alvarado Quinonez and the other laborers on the Crocs Project.

35.     Defendant Doe 1 and Defendant Doe 2 were specifically employed by Defendant IMI to supervise and ensure the safety of Mr. Alvarado Quinonez and others.

36.     Defendant Doe 3 and Defendant Doe 4 were specifically employed by Defendant Dematic to supervise and ensure the safety of Mr. Alvarado Quinonez and others.

37.     Defendant Doe 5 was specifically employed by Defendant Clayco to supervise and ensure the safety of Mr. Alvarado Quinonez and others.

38.     Defendant Doe 6 was specifically employed by Defendant Laporte to supervise and ensure the safety of Mr. Alvarado Quinonez and others.

39.     Defendants Sergio Romero, Lorenzo Avila, and Justin Parsons were also specifically employed by Defendant Dematic to supervise and ensure the safety of Mr. Alvarado Quinonez and others.

40.     Mr. Alvarado Quinonez arrived in Ohio sometime in the spring of 2019 and began working on the Crocs Project for the benefit of all Defendants.

41.     Mr. Alvarado Quinonez is a native Spanish speaker with limited English communication skills.

42.     He was not provided with appropriate safety training in his native language.

43.     The direct responsibility for Mr. Alvarado Quinonez's safety training fell with Defendant Doe 1, Defendant Doe 2, Defendant IMI, Defendant Doe 3, Defendant Doe 4, Defendant Sergio Romero, Defendant Lorenzo Avila, Defendant Justin Parsons, Defendant Dematic, Defendant Doe 5, Defendant Clayco, Defendant Doe 6, and/or Defendant Laporte.

44.     On June 17, 2019, Mr. Alvarado Quinonez was working on an elevated platform in an unfinished portion of the Crocs Project warehouse.

45.     Said platform was approximately 12.5' feet above the concrete floor below.

46.     The platform did not have guardrails on all sides and, in fact, had an open end and other openings where Plaintiff was required to work.

47.     There were no safety nets in vicinity of the platform to protect Mr. Alvarado Quinonez, or any other person working on the platform, from injury should a fall occur.

48.     Mr. Alvarado Quinonez was not provided with any fall arrest equipment and was specifically instructed to work on the platform without the benefit of any safety equipment.

49.     Plaintiff was working on the elevated platform at the Crocs Project when there was a power outage inside of the facility.

50.     During the power outage, Plaintiff fell from the elevated platform to the concrete floor below.

51.     Mr. Alvarado Quinonez's injuries were numerous and severe.

52.     Mr. Alvarado Quinonez was originally transported to Grandview Medical Center in Dayton, Ohio, but, because of the severity of his injuries, he was an inter-facility trauma transfer to Kettering Medical Center in Dayton.

53.     Jordan A. Jeffries, EMT-P, who was part of the transport team, noted that Mr. Alvarado Quinonez had "open frontal skull fracture, arterial bleed to the forehead with suture placed for bleeding control, pneumocephalus, bilateral trace pnumothoracies . . . [and] ecchymosis to forehead and right eye."

54.     Mr. Alvarado Quinonez then spent approximately the next twenty-six (26) days hospitalized at Kettering, from his admission on June 17, 2019 until his discharge on July 13, 2021.

55.     Following his discharge, Mr. Alvarado Quinonez began the long road to recovery that continues today.

56.     The United States Department of Labor, through the Occupational Safety and Health Administration, initiated an investigation ("the OSHA investigation") into Mr. Alvarado's fall on June 25, 2019.

57.     At various points during the course of the OSHA investigation, representatives from both Defendant IMI and Defendant Dematic claimed responsibility for the supervision, training, and safety of Mr. Alvarado.

58.     OSHA eventually made several findings against Defendant Dematic Corp. and Defendant Dematic Corp. was issued four citations for violations of the Code of Federal Regulation standards: 1) 29 C.F.R. 1926.501(b)(1) (duty to have fall protection for unprotected sides and edges more than six (6) feet above the next lower level); 2) 29 C.F.R. 1926.502(a)(1) (failure to comply with required fall protection systems); 3) 29 C.F.R. 1926.503(a)(2)(iii) (training

on the use and operation of guardrail systems, personal fall arrest systems, safety net systems, etc.); and 4) 29 C.F.R. 1926.503(a)(2)(viii) (failure to adhere to training standards).

59.     Those violations were issued on October 25, 2019 and resolved through informal settlement on December 13, 2019.

60.     It is possible that there was also an investigation completed by the Ohio Industrial Commission regarding the injuries sustained by Mr. Alvarado Quinonez on June 17, 2019.

61.     Additionally, sometime in 2019 a claim was made on Mr. Alvarado Quinonez's behalf with the Ohio Industrial Commission to recover workers' compensation benefits in Ohio.

62.     Mr. Alvarado Quinonez's employer for that action was listed as Defendant IMI.

63.     The Ohio workers compensation action was disallowed on the basis that Mr. Alvarado Quinonez was a resident of California at the time of the incident, the contract for hire between Mr. Alvarado Quinonez and Defendant IMI was made in California, Defendant IMI was deemed a California employer, and a workers compensation claim was filed in and allowed by the State of California.

64.     Mr. Alvarado Quinonez is still treating for his injuries today and that treatment is expected to continue for the next several years, at a minimum.

<u>Count I</u>

**DELIBERATE INTENT – OHIO REV. CODE § 2745.01**

65.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

66.     Mr. Alvarado Quinonez was injured because he was required to work on an elevated platform without appropriate safety equipment or safety measures being in place.

67. Defendant IMI, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

68. Further, Doe 1 and Doe 2, as supervisors and representatives of Defendant IMI, made the deliberate decision not to take safety precautions against falls.

69. Defendant Dematic, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

70. Additionally, and/or alternatively, Defendant Dematic actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

71. Additionally, and/or alternatively, Defendant Dematic gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries.

72. Defendant Doe 3 and Defendant Doe 4, and Defendants Sergio Romero, Lorenzo Avila, and Justin Parsons, as supervisors responsible for safety for Dematic, made deliberate decisions not to take safety precautions against falls.

73. Defendant Clayco, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

74. Additionally, and/or alternatively, Defendant Clayco actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training

regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

75.     Additionally, and/or alternatively, Defendant Clayco gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries. Defendant Doe 5, as the supervisor responsible for safety for Defendant Clayco, made deliberate decisions not to take safety precautions against falls.

76.     Defendant Doe 6 and Defendant Laporte, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

77.     Additionally, and/or alternatively, Defendant Doe 6 and Defendant Laporte actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

78.     Additionally, and/or alternatively, Defendant Doe 6 and Defendant Laporte gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries.

79.     The aforementioned Defendants acted or failed to act with the intent to injure Mr. Alvarado Quinonez. Defendants intentionally removed and/or failed to install fall arrest and safety systems, or to take other appropriate safety measures, to protect Mr. Alvarado Quinonez.

80.     Additionally, and/or alternatively, the aforementioned Defendants believed through their acts or failure(s) to act that injury to Mr. Alvarado Quinonez was substantially certain to occur.

81.     Defendants' acts and/or failure(s) to act were the actual and proximate cause of Mr. Alvarado Quinonez's injuries on June 17, 2019.

82.     Mr. Alvarado Quinonez suffered damages as a result of Defendants' acts and/or failure(s) to act.

## Count II

## COMMON LAW EMPLOYER INTENTIONAL TORT

83.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

84.     Mr. Alvarado Quinonez was injured because he was required to work on an elevated platform without appropriate safety equipment or safety measures being in place.

85.     Defendant IMI, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

86.     Further, Doe 1 and Doe 2, as supervisors and representatives of Defendant IMI, made the deliberate decision not to take safety precautions against falls.

87.     Defendant Dematic, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

88.     Additionally, and/or alternatively, Defendant Dematic actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

89.     Additionally, and/or alternatively, Defendant Dematic gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries.

90.     Defendant Doe 3 and Defendant Doe 4, and Defendants Sergio Romero, Lorenzo Avila, and Justin Parsons, as supervisors responsible for safety for Dematic, made deliberate decisions not to take safety precautions against falls.

91.     Defendant Clayco blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

92.     Additionally, and/or alternatively, Defendant Clayco actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

93.     Additionally, and/or alternatively, Defendant Clayco gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries.

94.     Defendant Doe 5, as the supervisor responsible for safety for Defendant Clayco, made deliberate decisions not to take safety precautions against falls.

95.     Defendant Doe 6 and Defendant Laporte, by and through its agents, blatantly disregarded OSHA regulations relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems.

96.     Additionally, and/or alternatively, Defendant Doe 6 and Defendant Laporte actively participated in and directed the activities relating to fall protections, fall arrest and safety systems, and training regarding both fall protections and fall arrest and safety systems that led to Mr. Alvarado Quinonez's injuries.

97.     Additionally, and/or alternatively, Defendant Doe 6 and Defendant Laporte gave or denied permission for the critical acts that led to Mr. Alvarado Quinonez's injuries.

98.     The aforementioned Defendants acted or failed to act with the intent to injure Mr. Alvarado Quinonez.   Defendants intentionally removed and/or failed to install fall arrest and safety systems, or to take other appropriate safety measures, to protect Mr. Alvarado Quinonez.

99.     Additionally, and/or alternatively, the aforementioned Defendants believed through their acts or failure(s) to act that injury to Mr. Alvarado Quinonez was substantially certain to occur.

100.    Defendants' acts and/or failure(s) to act were the actual and proximate cause of Mr. Alvarado Quinonez's injuries on June 17, 2019.

101.    Mr. Alvarado Quinonez suffered damages as a result of Defendants' acts and/or failure(s) to act.

## Count III

### EMPLOYER DUTY TO PROTECT EMPLOYEES AND FREQUENTERS – OHIO REV. CODE § 4101.11

102.    Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

103.    It is uncontroverted that Mr. Alvarado Quinonez was an employee of Defendant IMI.

104.    Under the facts or this case and, specifically, the interconnected working relationship between Defendant Dematic, Defendant Clayco, Defendant Laporte, Defendant NP Dayton, Defendant NPD, and Defendant Northpoint, Mr. Alvarado Quinonez was an employee of those defendants or, at a minimum, a frequenter of the Crocs Project for purposes of Ohio Rev. Code § 4101.11.

105.    Defendant IMI, Defendant Dematic, Defendant Laporte, and Defendant Clayco, individually and collectively, had a statutory duty to provide to Mr. Alvarado Quinonez with a

reasonably safe workplace by, *inter alia*, furnishing appropriate safety devices to protect from falls; to adopt methods and processes of work that protected from falls; to follow and obey all state and federal laws and regulations related to fall protection and training; and to otherwise take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez against falls.

106.    Defendant IMI, Defendant Dematic, Defendant Laporte, and Defendant Clayco, individually and collectively, breached the statutory duty to provide to Mr. Alvarado Quinonez with a reasonably safe workplace by, *inter alia*, failing to furnish Mr. Alvarado Quinonez with appropriate safety devices to protect from falls; failing to adopt methods and processes of work that protected Mr. Alvarado Quinonez from falls; failing to follow and obey all state and federal laws and regulations related to fall protection and training; and to otherwise take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez against falls.

107.    Defendant NP Dayton actively participated in the decisions related to the furnishment of appropriate safety devices and/or instituting or failing to institute methods and processes that protected Mr. Alvarado Quinonez from falls and/or failing to ensure compliance with all state and federal laws and regulations related to fall protection and training and/or otherwise failing to take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez while he was on its property.

108.    Defendant NP Dayton's active participation on the Crocs Project imposed upon it a statutory duty to protect Mr. Alvarado Quinonez just as it would any other employee.

109.    Upon information and belief, Defendant NP Dayton was formed and incorporated specifically for purposes of completing the Crocs Project.

110.    The Notice of Commencement on the Crocs Project was signed by "Nathaniel Hagedorn, as Manager of NPD Management, LLC, the Manager of NP Dayton Building IV, LLC."

111.    The sole member/organizer for Defendant NP listed with the Missouri Secretary of State is "Northpoint Development, LLC – Nathaniel Hagedorn."

112.    Likewise, the sole member/organizer for Defendant NPD listed with the Missouri Secretary of State is "Northpoint Development, LLC – Nathaniel Hagedorn."

113.    Sometime after it first organized with the State of Missouri, Defendant Northpoint updated its address with the Missouri Secretary of State to 4825 NW 41st Street, Suite 500, Riverside, MO 64150.  That update was signed by "Nathaniel Hagedorn, Manager."

114.    Defendants NP Dayton, NPD, and Northpoint share the same corporate address and manager.

115.    Nathaniel Hagedorn manages and controls the daily operations for Defendant NP Dayton, Defendant NPD, and Defendant Northpoint (collectively "the Northpoint Defendants").

116.    At all relevant times herein, Hagedorn exercised complete dominion and control over the Northpoint Defendants.  This dominion and control rendered each of the Northpoint Defendants without a separate mind, will, or existence of their own.

117.    The result is that the Northpoint Defendants are fundamentally indistinguishable.

118.    Hagedorn's control over the Northpoint Defendants was exercised in such a manner as to be considered a fraud, or otherwise unjust or inequitable, because Defendant NP Building is but a mere façade for Defendant NPD and Defendant Northpoint.

119.    As a direct and proximate result of Hagedorn's control and actions, Mr. Alvarado Quinonez suffered injury loss and injury for which the Northpoint Defendants are liable.

120.     By virtue of the foregoing, this Court should pierce the corporate veil and permit Mr. Alvarado Quinonez to have judgment against the Northpoint Defendants, as well as the other Defendants, for their acts and omissions.

121.     By creating or permitting the workplace conditions that allowed Mr. Alvarado Quinonez to fall and sustain injury, the aforementioned Defendants breached their statutory dut(ies) to Mr. Alvarado Quinonez under Ohio Rev. Code § 4101.11.

122.     Mr. Alvarado Quinonez suffered damages as a result of Defendants' breach(es) of their statutory dut(ies) under Ohio Rev. Code § 4101.11.

## <u>Count IV</u>

## EMPLOYER DUTY TO FURNISH SAFE PLACE OF EMPLOYMENT – OHIO REV. CODE § 4101.12

123.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

124.     It is uncontroverted that Mr. Alvarado Quinonez was an employee of Defendant IMI.

125.     Under the facts or this case and, specifically, the interconnected working relationship between Defendant Dematic, Defendant Clayco, Defendant Laporte, Defendant NP Dayton, Defendant NPD, and Defendant Northpoint, Mr. Alvarado Quinonez was an employee of those defendants or, at a minimum, a frequenter of the Crocs Project for purposes of Ohio Rev. Code § 4101.12.

126.     Defendant IMI, Defendant Dematic, Defendant Laporte, and Defendant Clayco, individually and collectively, had a statutory duty to provide to Mr. Alvarado Quinonez with a reasonably safe workplace by, *inter alia*, furnishing appropriate safety devices and safeguards to protect from falls; to adopt methods and processes of work that protected from falls; to follow and

obey all state and federal laws and regulations related to fall protection and training; and to otherwise take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez against falls.

127. Defendant IMI, Defendant Dematic, Defendant Laporte, and Defendant Clayco, individually and collectively, breached the statutory duty to provide to Mr. Alvarado Quinonez with a reasonably safe workplace by, *inter alia*, failing to furnish Mr. Alvarado Quinonez with appropriate safety devices and safeguards to protect from falls; failing to adopt methods and processes of work that protected Mr. Alvarado Quinonez from falls; failing to follow and obey all state and federal laws and regulations related to fall protection and training; and to otherwise take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez against falls.

128. Defendant NP Dayton actively participated in the decisions related to the furnishment of appropriate safety devices and/or instituting or failing to institute methods and processes that protected Mr. Alvarado Quinonez from falls and/or failing to ensure compliance with all state and federal laws and regulations related to fall protection and training and/or otherwise failing to take the reasonably necessary steps to protect the life, health, safety, and welfare of Mr. Alvarado Quinonez while he was on its property.

129. Defendant NP Dayton's active participation on the Crocs Project imposed upon it a statutory duty to protect Mr. Alvarado Quinonez just as it would any other employee.

130. Upon information and belief, Defendant NP Dayton was formed and incorporated specifically for purposes of completing the Crocs Project.

131. The Notice of Commencement on the Crocs Project was signed by "Nathaniel Hagedorn, as Manager of NPD Management, LLC, the Manager of NP Dayton Building IV, LLC."

132.   The sole member/organizer for Defendant NP listed with the Missouri Secretary of State is "Northpoint Development, LLC – Nathaniel Hagedorn."

133.   Likewise, the sole member/organizer for Defendant NPD listed with the Missouri Secretary of State is "Northpoint Development, LLC – Nathaniel Hagedorn."

134.   Sometime after it first organized with the State of Missouri, Defendant Northpoint updated its address with the Missouri Secretary of State to 4825 NW 41st Street, Suite 500, Riverside, MO 64150.  That update was signed by "Nathaniel Hagedorn, Manager."

135.   Defendants NP Dayton, NPD, and Northpoint share the same corporate address and manager.

136.   Nathaniel Hagedorn manages and controls the daily operations for Defendant NP Dayton, Defendant NPD, and Defendant Northpoint (collectively "the Northpoint Defendants").

137.   At all relevant times herein, Hagedorn exercised complete dominion and control over the Northpoint Defendants.  This dominion and control rendered each of the Northpoint Defendants without a separate mind, will, or existence of their own.

138.   The result is that the Northpoint Defendants are fundamentally indistinguishable.

139.   Hagedorn's control over the Northpoint Defendants was exercised in such a manner as to be considered a fraud, or otherwise unjust or inequitable, because Defendant NP Building is but a mere façade for Defendant NPD and Defendant Northpoint.

140.   As a direct and proximate result of Hagedorn's control and actions, Mr. Alvarado Quinonez suffered injury loss and injury for which the Northpoint Defendants are liable.

141.   By virtue of the foregoing, this Court should pierce the corporate veil and permit Mr. Alvarado Quinonez to have judgment against the Northpoint Defendants, as well as the other Defendants, for their acts and omissions.

142.     By creating or permitting the workplace conditions that allowed Mr. Alvarado Quinonez to fall and sustain injury, the aforementioned Defendants breached their statutory dut(ies) to Mr. Alvarado Quinonez under Ohio Rev. Code § 4101.12.

143.     Mr. Alvarado Quinonez suffered damages as a result of Defendants' breach(es) of their statutory dut(ies) under Ohio Rev. Code § 4101.12.

<u>Count V</u>

**NEGLIGENT HIRING**

144.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

145.     Mr. Alvarado Quinonez was hired by Defendant IMI and brought to Ohio from California to work as a laborer.

146.     Likewise, Defendant IMI selected Doe 1 and Doe 2 to serve as supervisors of Mr. Alvarado Quinonez and to ensure workplace safety for Mr. Alvarado Quinonez on the Crocs Project.

147.     Defendant IMI knew or should have known of Doe 1 and Doe 2's incompetence as it related to making sure laborers on the Crocs Project were protected from falls.

148.     Defendant IMI's actual and/or constructive knowledge of said incompetence is demonstrated by, *inter alia*, the failure to provide Mr. Alvarado Quinonez with a fall arrest device or other personal protective equipment or other means to protect Mr. Alvarado Quinonez from injury as a result of a fall.  This includes, but is not limited to, the failure to institute policies and procedures that would have significantly lessened the chance for a fall.

149.     Mr. Alvarado Quinonez's injuries are the direct and proximate result of Doe 1 and Doe 2 failing to provide Mr. Alvarado Quinonez with the appropriate safety equipment or to otherwise reasonably take the necessary steps to protect him from a fall.

150.     Likewise Defendant Dematic, employed Doe 3 and Doe 4 and Defendants Sergio Romero, Lorenz Avila, and Justin Parsons, and tasked with them with ensuring workplace safety at the Crocs Project.

151.     Defendant Clayco employed Doe 5 and tasked him with ensuring workplace safety and preventing falls at the Crocs Project on its behalf.

152.     Defendant Laporte employed Doe 6 and tasked him with ensuring workplace safety and preventing falls at the Crocs Project on its behalf.

153.     Defendants Dematic, Clayco, and Laporte knew or should have known of Doe 3, Doe 4, Doe 5, and Doe 6 and Sergio Romero, and Lorenzo Avila, and Justin Parson's incompetence as it related to ensuring laborers on the Crocs Project were protected from falls.

154.     Defendants Dematic, Clayco, and Laportes's actual and/or constructive knowledge of said incompetence is demonstrated by, *inter alia*, the failure to provide Mr. Alvarado Quinonez with a fall arrest device or other personal protective equipment or other means to protect Mr. Alvarado Quinonez from injury as a result of a fall.  This includes, but is not limited to, the failure to institute policies and procedures that would have significantly lessened the chance for a fall.

155.     Mr. Alvarado Quinonez's injuries are the direct and proximate result of Doe 3, Doe 4, Doe 5, Doe 6, Sergio Romero, Lorenzo Avila, and/or Justin Parsons failing to provide Mr. Alvarado Quinonez with the appropriate safety equipment or to otherwise reasonably take the necessary steps to protect him from a fall.

## Count VI

### NEGLIGENCE

156.     Plaintiff incorporates and realleges all preceding paragraphs as if fully set forth herein.

157.     Mr. Alvarado Quinonez was hired by Defendant IMI and brought to Ohio from California to work as a laborer on the Crocs Project.

158.     The decision to bring Mr. Alvarado Quinonez from California to Ohio was explicitly and/or implicitly made by each Defendant for their own individual and/or collective benefit(s).

159.     Each Defendant, individually and/or collectively, had a duty to ensure that Mr. Alvarado Quinonez was protected from injury while working on the Crocs Project.

160.     Each Defendant, individually and/or collectively, breached that duty by allowing Mr. Alvarado Quinonez to be injured.

161.     Mr. Alvarado Quinonez's injuries are the direct and proximate result of failure to protect Mr. Alvarado Quinonez from injury.

162.     Mr. Alvarado Quinonez has suffered, and will continue to suffer, damages as a result of Defendants' individual and/or collective breach(es) of duty to Plaintiff.

WHEREFORE, Plaintiff Plinio Alvarado Quinonez prays for judgment against all Defendants, jointly and severally, for:

     a.   Compensatory damages in an amount that will fully and fairly compensate him for his injuries, damage, and loss;

     b.   Punitive damages against Defendants in an amount that will serve to adequately punish and deter the conduct alleged herein;

c.  Costs of suit and reasonable attorneys' fees;

d.  All such other relief to which Plaintiff is entitled and/or the Court deems necessary and just.

> */s/ Tyler C. Haslam*
> Tyler C. Haslam (OH # 0086861)
> ***HASLAM LAW FIRM LLC***
> P.O. Box 585
> Huntington, WV 25710
> T: (855) 225-3750
> F: (304) 948-8282
> tyler@haslamlawfirm.com
>
> Brigham M. Anderson (OH #0078174)
> ***ANDERSON & ANDERSON CO., LPA***
> P.O. Box 712
> Ironton, OH 45638
> T: (740) 532-7779
> F: (740) 532-7785
> andersonlawoffice@hotmail.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

> */s/ Tyler C. Haslam*
> Tyler C. Haslam (OH # 0086861)
> ***HASLAM LAW FIRM LLC***
> P.O. Box 585
> Huntington, WV 25710
> T: (855) 225-3750
> F: (304) 948-8282
> tyler@haslamlawfirm.com
>
> Brigham M. Anderson (OH #0078174)
> ***ANDERSON & ANDERSON CO., LPA***
> P.O. Box 712
> Ironton, OH 45638
> T: (740) 532-7779
> F: (740) 532-7785
> andersonlawoffice@hotmail.com