IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PLINIO ALVARADO QUINONEZ,

    Plaintiff,

v.

IMI MATERIAL HANDLING
LOGISTICS, INC., *et al.*,

    Defendants.

Case No. 3:21-cv-159

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING WITHOUT PREJUDICE TO REFILING AT THE CLOSE OF DISCOVERY THE MOTION OF DEFENDANTS NP DAYTON BUILDING IV, LLC, NPD MANAGEMENT, LLC, AND NORTHPOINT DEVELOPMENT, LLC, FOR SUMMARY JUDGMENT (DOC. #72)

---

Plaintiff, Plinio Alvarado Quinonez, was severely injured on the job. He sued numerous entities, asserting a variety of state law claims against IMI Material Handling Logistics, Inc. ("IMI"), Dematic Corporation ("Dematic"), Clayco, Inc. ("Clayco"), Crocs, Inc. ("Crocs"), NP Dayton Building IV, LLC, NPD Management, LLC, Northpoint Development, LLC, LaPorte Consultants Corporation ("LaPorte"), Sergio Romero, Lorenzo Avila, Justin Parsons, and numerous John Doe Defendants. This Court's jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

This matter is currently before the Court on the Motion of Defendants NP Dayton Building IV, LLC, NPD Management, LLC, and Northpoint Development,

LLC (collectively, "the NP Defendants") for Summary Judgment, Doc. #72, Plaintiff's Memorandum in Opposition, Doc. #76, and the NP Defendants' Reply, Doc. #79. The NP Defendants argue that summary judgment is warranted; Plaintiff urges the Court to either deny the motion or allow additional discovery.

I.  **Background and Procedural History**

Plaintiff, Plinio Alvarado Quinonez, is a citizen and resident of California. He was hired as a laborer to help construct a new warehouse for Crocs, Inc. ("Crocs"), in Vandalia, Ohio. On June 17, 2019, Plaintiff fell approximately 12.5 feet from an elevated platform inside the warehouse to the concrete floor below. The platform lacked guardrails on all sides. Moreover, Plaintiff had no fall arrest equipment and there were no safety nets in the vicinity of the platform. He suffered severe injuries, requiring 26 days of hospitalization.

At the time of Plaintiff's injury, the warehouse was owned by NP Dayton Building IV, LLC, for the benefit of Crocs. NP Dayton Building IV retained Northpoint Development Company to act as its agent during the construction of the warehouse. Doc. #72-1, PageID#1108. Clayco was hired as the general contractor. Clayco hired Dematic to build the warehouse, and LaPorte served as the project manager. Dematic contracted with IMI, a temporary staffing agency, to provide laborers for the Crocs project, including Plaintiff.[1] Defendants Romero,

---

[1] Defendant IMI has filed for bankruptcy protection. The remaining parties have agreed that this litigation can proceed even though the case is stayed as to IMI.

2

Avila and Parsons were supervisors and foremen employed by Dematic and assigned to work on the Crocs project.[2] In the Fall of 2019, NPD Management, LLC began managing the premises. Doc. #72-2, PageID#1114. A ribbon cutting ceremony was held on November 6, 2019. Doc. #1, PageID#4.

On June 9, 2021, Plaintiff filed suit alleging violations of Ohio Revised Code § 2745.01—deliberate intent (Count I); Common Law Employer Intentional Tort (Count II); Ohio Rev. Code § 4101.11—employer duty to protect employees and frequenters (Count III); Ohio Rev. Code § 4101.12—employer duty to furnish a safe place of employment (Count IV); Negligent Hiring (Count V); and Negligence (Count VI). Doc. #1. The NP Defendants filed a cross claim against Clayco, Doc. #35, and filed a third-party complaint against Crocs, Doc. #57. Crocs later filed a crossclaim against Dematic, Doc. #63.

In his Complaint, Plaintiff alleges that, given the interconnected working relationship between Dematic, Clayco, Laporte, and the NP Defendants, he should be considered either an employee of the NP Defendants or, at a minimum, a "frequenter" of the Crocs project for purposes of Ohio Revised Code §§4101.11 and 4101.12.[3] He further alleges that NP Dayton Building IV had a duty to protect

---

[2] The seven John Doe Defendants were employed by IMI, Dematic, Clayco and LaPorte as supervisors on the Crocs project.

[3] As the Supreme Court of Ohio explained in *Kucharski v. National Engineering & Contracting Co.*, 69 Ohio St. 3d 430, 432-33 (1994), these two statutes are commonly referred to as the "frequenter" statutes. They originally codified the common law duty of business owners to keep the premises safe for business invitees, but passage of the Ohio Workers' Compensation Act rendered the

3

him from injury, given its active participation in the project with respect to safety devices, methods and training. In addition, Plaintiff alleges that because NP Dayton Building IV, Northpoint Development, LLC and NPD Management, LLC share the same corporate address and manager, the Court should pierce the corporate veil and permit recovery against all of the NP Defendants.

The NP Defendants have moved for summary judgment on the claims asserted against them. Doc. #72. Plaintiff argues that genuine issues of material fact preclude summary judgment. In the alternative, he maintains that the motion is premature and asks for additional time to complete discovery. Doc. #76. The NP Defendants ask the Court to deny Plaintiff's request for additional time and grant the motion on the merits. Doc. #79. During a conference call held on January 17, 2023, counsel indicated that written discovery is ongoing and no depositions had yet taken place.

## II. Fed. R. Civ. P. 56

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

---

statutes obsolete with respect to damage suits by employees. However, the statutes are still used "by injured employees of subcontractors who seek damages, in addition to workers' compensation benefits, from the property owners, or contractors in privity with their employers, who fail to keep the property safe from hazards for 'frequenters.'" *Id.*

4

*v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; *see also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the

5

dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe; credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2726 (3d ed. 1998).

### III. Discussion

In order to prevail on a negligence claim under Ohio Revised Code §§ 4101.11 or 4101.02, Plaintiff must prove: (1) a duty owed by the NP Defendants to him; (2) a breach of that duty; (3) damages; and (4) proximate cause. *Hester v. Dwivedi*, 89 Ohio St. 3d 575, 578 (Ohio 2000). In their Motion for Summary Judgment, the NP Defendants argue that summary judgment is warranted on the negligence-based claims because, on the date in question, they owed no duty to Plaintiff to protect him from injury. The NP Defendants further argue that punitive damages are not warranted, and that there is no legal basis to pierce the corporate veil of one NP Defendant to reach the assets of another.

The only evidence submitted by the NP Defendants in support of their motion is two affidavits. One is from Jeremy Michael, Northpoint Development,

6

LLC's Vice President of Development. Doc. #72-1. The other is from Tracy Russell, NPD Management, LLC's Regional Property Manager. Doc. #72-2.

Therein, Michael and Russell deny that Plaintiff was ever an employee or subcontractor of their companies. They deny that their companies had any responsibility for supplying, installing or providing any safety equipment at the warehouse, and claim to be unaware that any of their employees did, or failed to do, anything that contributed to Plaintiff's fall. They maintain that, on the date of Plaintiff's injury, their companies were not in possession or control of the area where Plaintiff was working, or of the manner in which Plaintiff was to perform his job. In fact, Russell avers that NPD Management did not take control of the warehouse until the Fall of 2019, months after Plaintiff was injured. Michael and Russell deny that they or any of their personnel acted in a reckless, malicious, willful or wanton manner, or in a spirit of revenge or with ill will or hatred against Plaintiff.

The NP Defendants argue that because NPD Management did not possess, control or own the property on the date of the injury, it had no duty to protect Plaintiff. They further argue that they owed Plaintiff no duty because he was performing an "inherently dangerous task," working on an elevated platform on a construction site. *See Morris v. Collier Constr. Co.*, No. 2018CA00167, 2019-Ohio-3946, 2019 WL 4733467, ¶17 (Ohio Ct. App. Sept. 26, 2019). Finally, they argue that, because they did not actively participate in Plaintiff's work, they owed him no duty of protection. *See Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St. 3d

7

206, 207-08 (Ohio 1983). Michael and Russell maintain that their companies had no possession or control over his work area, his job duties, or any critical variable in the work area where he was injured.

In response to the Motion for Summary Judgment, Plaintiff argues that certain statements contained in the affidavits are inconsistent with factual allegations contained in the cross-claims and third-party claim filed by the NP Defendants. For example, although Defendants deny having possession or control of the area where Plaintiff was injured, their Third-Party Complaint against Crocs alleges that NP Dayton Building IV owned the building on the date of Plaintiff's injury. In connection with the contribution claim, the Third-Party Complaint also alleges that the NP Defendants and Crocs were "joint tortfeasors with respect to the injuries and/or damages allegedly sustained by Plaintiff in his fall." Doc. #53, PageID##518-19. Plaintiff maintains that these allegations demonstrate that there are material factual disputes that must be resolved by a jury.

The NP Defendants properly note that allegations contained in unverified pleadings, including third-party complaints, are insufficient to create a genuine issue of material fact. *Mounts v. Grand Trunk W. R.R.*, 198 F.3d 578, 580 (6th Cir. 2000). At this stage, Plaintiff has presented no "evidence" that would preclude the Court from granting summary judgment in favor of the NP Defendants on any of his claims against them. The remaining question is whether he should be allowed additional time to respond following time for discovery.

8

Plaintiff argues that the NP Defendants' Motion for Summary Judgment is premature because discovery has not yet concluded.[4] Although a motion for summary judgment may be filed "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), Rule 56 provides some recourse when a motion is filed before sufficient discovery has taken place. Fed. R. Civ. P. 56(d) provides as follows:

*When Facts Are Unavailable to the Nonmovant.* If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Here, Plaintiff notes that the only evidence submitted by the NP Defendants in support of their motion are the affidavits of Jeremy Michael and Tracy Russell, Docs. ##72-1 and 72-2. He argues that their "self-serving" affidavits are insufficient grounds on which to grant summary judgment. More importantly, Plaintiff claims that he has not yet had the opportunity to depose Michael or Russell regarding the substance their affidavits. Michael and Russell both admit that they were not at the warehouse on the date of Plaintiff's fall. Doc. #72-1,

---

[4] Plaintiff also argues that the motion is premature because there are pending motions directed to the pleadings. However, those motions are not related to Plaintiff's claims against the NP Defendants. Accordingly, the Court rejects this as a basis for delaying ruling on the summary judgment motion.

9

PageID#1109; Doc. #72-1, PageID#1115. Plaintiff therefore argues that they have no personal knowledge about what part their agents might have played in his injuries, and that any knowledge they did have would be hearsay.[5] Plaintiff further notes that Russell was not previously disclosed as a fact witness.

Defendants argue that Plaintiff is not entitled to additional time under Fed. R. Civ. P. 56(d) because he has not shown by affidavit or declaration that, for specified reasons, he cannot present facts essential to justify his opposition. The Sixth Circuit, however, has held that a formal affidavit or declaration may not be required when, as here, a party has clearly explained the need for more discovery prior to or contemporaneously with the motion for summary judgment. *Unan v. Lyon*, 853 F.3d 279, 293 (6th Cir. 2017).

The Court may consider multiple factors in deciding whether to grant additional time for summary-judgment-related discovery under Rule 56(d), including when the Plaintiff learned of the issue that is the subject of the desired discovery, whether the desired discovery is material, how long the discovery period lasted, whether Plaintiff was dilatory in his discovery efforts, and whether Defendants were responsive to discovery requests. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008).

---

[5] Defendants respond that the absence of the affiants from the premises on the date of the injury does not mean they lack knowledge of relevant facts concerning where their employees were working that day. As corporate representatives, Michael and Russell are qualified to testify on this topic.

10

Here, in large part, it was the filing of the Motion for Summary Judgment, with the attached affidavits, that alerted Plaintiff to many of the issues that are the subject of the desired discovery. As Plaintiff notes, Russell was not disclosed as a fact witness. Whether the depositions of Michael and Russell are material to Plaintiff's claims remains to be seen. The discovery period has not yet ended and as previously discussed, as of January 17, 2023, written discovery was ongoing and *neither party* had taken any depositions. Accordingly, although Plaintiff may have had eight months to conduct discovery between the time the initial court conference was held and when his response to the Motion for Summary Judgment was due, it cannot be said that he alone was dilatory.

Plaintiff has requested additional time so that he can, at the very least, depose Michael and Russell concerning the substance of their affidavits, the only "evidence" presented by the NP Defendants in support of their Motion for Summary Judgment.

In the Court's view, this is a reasonable request. Under the circumstances presented here, and in the interest of fairness, the Court, pursuant to Fed. R. Civ. P. 56(d), will overrule Defendants' motion without prejudice to renewal at the close of discovery.

11

## IV. Conclusion

For the reasons set forth above, the Court OVERRULES the NP Defendants' Motion for Summary Judgment, Doc. #72, WITHOUT PREJUDICE to refiling at the close of discovery.

Date: March 8, 2023

WALTER H. RICE
UNITED STATES DISTRICT JUDGE