**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (DAYTON)**

| | | |
|---|---|---|
| PLINIO ALVARADO QUINONEZ, | : | Case No. 3:21-cv-00159 |
| | : | |
| Plaintiff, | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| IMI MATERIAL HANDLING | : | |
| LOGISTICS, INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS

This action arises from injuries that Plaintiff sustained from a fall while working as a laborer in Vandalia, Ohio. (Complaint, Doc. No. 1, PageID 2-3.) Plaintiff alleges that his injuries were caused by inadequate training and a lack of proper safety equipment. (*Id.*) One defendant is Clayco, Inc. ("Clayco"), the general contractor for the construction project, which has denied liability for Plaintiff's injuries. (Answer, Doc. No. 14.)

This matter is before the undersigned Magistrate Judge for a Report and Recommendation regarding Plaintiff's compliance, or lack thereof, with this Court's Order to Show Cause (Doc. No. 120). For the reasons set forth below, the undersigned recommends that the Court dismiss Plaintiff's claims against Clayco with prejudice as a discovery sanction under Rule 37 of the Federal Rules of Civil Procedure.

## I.   STATEMENT OF FACTS

On September 14, 2022, Clayco served Plaintiff with a first set of interrogatories and requests for production of documents. (Notice, Doc. No. 87.) Pursuant to Rules

1

33(b)(2) and 34(b)(2)(A) of the Federal Rules of Civil Procedure, Plaintiff was required to respond or object to those discovery requests within thirty days. Plaintiff did not do so. Nor did Plaintiff seek an extension of time to respond. (Doc. No. 102, PageID 1262.)

On October 21, 2022, Clayco's counsel wrote to Plaintiff's counsel about the delinquent discovery responses and asked Plaintiff either to reply to the letter or provide discovery responses within five days. (Clayco's Exhibit B, Doc. No. 101-2.) Plaintiff did not respond. (Doc. No. 102, PageID 1263.)

On January 19, 2023, Clayco's counsel emailed Plaintiff's counsel to express an intent "to resolve [the] discovery dispute without the need for court intervention" and to ask when Plaintiff would provide the discovery responses. (Clayco's Exhibit C, Doc. No. 101-3, PageID 1259.) Again, Plaintiff did not respond. (Doc. No. 102, PageID 1263.)

On May 10, 2023, District Judge Walter H. Rice conducted a telephone conference with the parties. Clayco's counsel informed the Court that Plaintiff had yet to respond to Clayco's first set of discovery requests. Plaintiff's counsel indicated that he would review the outstanding requests.

Two days later, Clayco's counsel emailed Plaintiff's counsel to inquire when the discovery responses would be provided. (Defendant Clayco's Exhibit D, Doc. No. 101-4.) Again, Plaintiff did not respond. (*See* Doc. No. 102, PageID 1264.)

On May 31, 2023, Clayco filed what would become its First Motion to Compel. (Doc. No. 102.) Stating that it still had not received discovery responses from Plaintiff, Clayco asked the Court to order Plaintiff to comply with Clayco's discovery requests and

to impose sanctions on Plaintiff pursuant to Rule 37 of the Federal Rules of Civil

Procedure. (*Id*. at PageID 1264.)

In October 2023, while Clayco's First Motion to Compel was pending, Judge Rice

conducted two additional telephone conferences with the parties. On October 23, 2023,

the parties filed a Joint Discovery Plan (Doc. No. 110). That document stated, in relevant

part: "Plaintiff will provide updated medical records and bills by November 3, 2023.

Responses to Clayco's outstanding discovery requests to be provided on November 3,

2023 as well." (*Id*. at PageID 1290.)

Despite these representations to the Court, however, Plaintiff did not provide the

promised discovery responses. (Memorandum in Support of Second Motion, Doc. No.

112, PageID 1298.) On November 13, 2023, Clayco's counsel emailed Plaintiff's counsel

to inquire about the discovery responses. (Defendant Clayco's Second Exhibit A, Doc.

No. 112-1.) Again, Plaintiff did not respond. (Doc. No. 113, PageID 1314-15.)

On November 27, 2023, Clayco filed its Second Motion to Compel. (Doc. No.

112.) In the Second Motion, Clayco again requested an order compelling Plaintiff to

respond to Clayco's discovery requests and imposing sanctions pursuant to Rule 37 of the

Federal Rules of Civil Procedure. (*Id*. at PageID 1299-1300.) In addition, Clayco asked

the Court to deem waived any objections that Plaintiff might assert in response to

Clayco's discovery requests. As an alternative sanction, Clayco asked the Court to

dismiss Plaintiff's case for failure to prosecute. (*Id*.)

On February 5, 2024, in an Order that characterized Plaintiff's conduct as

"unexcused and inexcusable," the Court granted both Motions to Compel. (Doc. No.

114.) The Court ordered Plaintiff "to respond fully and without objection to any and all discovery requests previously propounded by Defendant Clayco." (*Id*. at PageID 1327.) The Court declined to impose the extreme sanction of dismissal but warned: "**Plaintiff is *specifically cautioned* that any further evidence of delay or contumacious behavior – including any failure to fully and timely comply with this Order – may result in the dismissal of his claims.**" (*Id*. at PageID 1326-27 (emphases in original).)

Despite this warning, Plaintiff did not fully comply with the Court's February 5, 2024 Order. (*See* Doc. Nos. 116-1 & 116-2.) Therefore, on April 4, 2024, the Court ordered Plaintiff to show cause why his claims against Defendant Clayco should not be dismissed with prejudice. (Order to Show Cause, Doc. No. 120.) Plaintiff filed a Response (Doc. No. 121) and Defendant Clayco filed a Reply (Doc. No. 122).

This matter is now before the undersigned to determine whether Plaintiff has fully complied with the Court's February 5, 2024 Order and, if he has not, what remedy is appropriate. Four discovery requests remain in dispute.[1] The Court will set out the relevant facts and each party's position with respect to each discovery request.

A.     **Request for Production No. 16**

Request for Production No. 16 sought, and Plaintiff responded, as follows:

16.     Any and all photographs, videotapes, notes, journals, diaries, or other documents which depict, describe, relate or refer to any adverse effect of any injuries you suffered as a result of the incident alleged in Plaintiff's Complaint.

---

[1] In its Reply, Defendant Clayco also requested sanctions based upon Plaintiff's refusal to provide a date for his deposition. (Doc. No. 122, PageID 1397-98.) Because this issue was not addressed in the Court's February 5, 2024 Order, and was raised for the first time in a reply memorandum, the Court will not address it further in this decision.

> **RESPONSE:** Plaintiff refers to and relies upon the documents produced and incorporated by reference in his response to Request No. 1, including those Bates labeled as Quinonez00001 to Quinonez04588 and any documents produced by any other party in this matter. Plaintiff reserves the right to supplement and/or amend this response.

(Feb. 20, 2024 Responses to Document Requests, Doc. No. 116-2, PageID 1358.)

The Court found that Plaintiff's reference to more than forty-five-hundred pages that Plaintiff had produced, without specific Bates numbers, was non-responsive. (Doc. No. 120, PageID 1370.) Moreover, because Plaintiff described these documents as consisting of medical records and workers' compensation records, they presumably did not include all "photographs, videotapes, notes, journals, diaries, or other documents" that depict Plaintiff's injuries and resulting adverse effects. (*See* Doc. No. 116-2, PageID 1350-51.) The Court therefore ordered Plaintiff to show why it should not dismiss his claims against Clayco with prejudice. (Doc. No. 120, PageID 1370-71.)

In response, Plaintiff argued that his written response to Request for Production No. 16 expressly incorporated his written response to Request for Production No. 1. (Doc. No. 121, PageID 1375.) According to Plaintiff, his response to Request for Production No. 1 "includes a chart of Bates records and specifically points to a) Clayco's own BATES numbered production; b) the BATES numbered production of Defendant Dematic; and c) Exhibits 1 through 4 that were attached to Doc. #65."[2] (*Id.*) Plaintiff did not identify which, if any, of these documents constitute "photographs, videotapes, notes,

---

[2] Exhibits 1-4 are titled on the docket as: (1) BWC Overpayment Worksheet by IMI, (2) letter from Gallagher Bassett re: workers compensation benefits; (3) Dematic's Ohio certificate of workers' compensation; and (4) Dematic's California certificate of liability insurance (which is blank). (Doc. No. 65, Exhibits 1-4, PageID 1036-42.)

journals, diaries, or other documents" that depict Plaintiff's injuries and resulting adverse effects. Nor did Plaintiff explain why two **Defendants** in this matter (i.e., Clayco and Dematic) would have possessed and produced such documents.

### B.     Request for Production No. 19

Request for Production No. 19 sought, and Plaintiff responded, as follows:

19.     Executed authorizations/releases attached hereto including: HIPAA compliant medical authorization form, authorization for insurance records and authorization for employment records.

**RESPONSE:**  Plaintiff is executing and providing updated authorizations and releases in response to this request.  Plaintiff will supplement this request [sic].

(Feb. 20, 2024 Responses to Document Requests, Doc. No. 116-2, PageID 1359.)

The Court ordered Plaintiff to provide executed authorizations within fourteen days of its February 5, 2024 Order. (Doc. No. 120, PageID 1369-70.) But in the above-quoted response, Plaintiff stated only that he "is executing and providing updated authorizations and releases in response to this request." (Doc. No. 116-2, PageID 1359.) This vague statement did not indicate that Plaintiff had in fact complied with this Court's Order. The Court therefore ordered Plaintiff to show why it should not dismiss his claims against Clayco with prejudice. (Doc. No. 120, PageID 1370-71.)

In response, Plaintiff's counsel stated:

[A]t the time this Court entered its order on February 5, 2024, Plaintiff was out of the country and only returned within the last few weeks. Counsel only recently learned that Plaintiff was not physically in the United States for approximately the last two months. . . .

Plaintiff's counsel requested Plaintiff provide updated authorizations to timely comply with the Court's order. Plaintiff's delay in providing

6

authorizations was caused by his being out of country at the time the Court issued its order. Plaintiff provided updated authorizations with an electronic signature to his counsel, who then provided the same to Clayco and the other defendants on March 6, 2024. Clayco responded a week later on March 13, 2024 asking for notarized authorizations. Counsel immediately reached out to Plaintiff to request notarized authorizations with a "wet ink" signature to send to Plaintiff. Those "wet ink" authorizations were received today, April 18, 2024, and placed into the mail for Clayco.

(Doc. No. 121, PageID 1381-82.)

To summarize, although the Court's February 5, 2024 Order required Plaintiff to provide executed authorizations by February 19, 2024, Plaintiff did not provide them to his counsel until approximately two weeks after that deadline had passed. Then, after Clayco advised Plaintiff's counsel that the authorizations had been improperly executed (a fact that Plaintiff's counsel "immediately" advised his client of), it took Plaintiff more than one month to provide notarized, "wet ink" authorizations to his counsel. Plaintiff claimed that his response was untimely because "he was out of the country, not because he was resisting authority or being disobedient." (Doc. No. 121, PageID 1382.) But he did not explain why he could not have used email or overnight mail to respond sooner and in a timely fashion, even while he was out of the country.

In its Reply, which it filed on April 25, 2024, Clayco stated that although Plaintiff's counsel claimed to have mailed the executed authorizations on April 18, 2024, "no authorizations have been received." (Doc. No. 122, PageID 1396.) There have been no further filings by either party regarding the status of the executed authorizations.

### C. Interrogatory No. 17

Interrogatory No. 17 requested, and Plaintiff responded, as follows:

17.     State the names and addresses of all doctors, hospitals or health care providers who have treated, examined or attended Plaintiff since the incident in question and because of it, and for each listed, please state:

(a)     The amount of the bill from each such health care provider for services rendered because of the incident in question;

(b)     The number of visits and the specific dates of each visit Plaintiff has made to each of these health care providers because of the incident;

(c)     The conditions for which Plaintiff was examined or treated;

(d)     If you claim that Plaintiff received a medical examination, care or treatment because of the incident mentioned in the Complaint, please sign and return the attached medical authorization, after inserting the names and addresses of the doctors, hospitals or health care providers.

**ANSWER:** Plaintiff refers to his medical records, treatment notes, and workers' compensation evaluations produced in Quinonez00001 to Quinonez04588. Plaintiff does not have itemized bills from each provider, but has, on several occasions, requested an itemized lien from Gallagher Bassett Services, Inc. and has not yet received it. Plaintiff understands that as of 12/04/2023 he had an outstanding lien of approximately $725,000 directly related to the incident. Plaintiff will supplement this response with an authorization. Plaintiff reserves the right to supplement and/or amend this response.

(Feb. 20, 2024 Responses to Interrogatories, Doc. No. 116-1, PageID 1346-47.)

Plaintiff's interrogatory answer plainly did not provide the names and addresses of all of his treating providers. Defendant Clayco complained, and the Court agreed, that Plaintiff's reference to more than forty-five-hundred pages that he had produced, without specific Bates numbers, was non-responsive and left it unclear whether (and the extent to which) Plaintiff had responded to the request. (Reply, Doc. No. 116, PageID 1333; Order to Show Cause, Doc. No. 120, PageID 1370.) In addition, as discussed above, the authorizations that Plaintiff provided were improperly executed. (*Id*.) The Court therefore

8

ordered Plaintiff to show why it should not dismiss his claims against Clayco with prejudice. (Doc. No. 120, PageID 1370-71.)

In his Response, Plaintiff contended that he did not need to list the names and addresses of his providers because: (1) he provided that information in his Rule 26(a)(1) initial disclosures on January 18, 2022; and (2) the information can be found in medical records that he produced. (Doc. No. 121, PageID 1374-80.)

In its Reply, Clayco argued that the answer to Interrogatory No. 17 is deficient because Plaintiff's initial disclosures (1) "list[ed] no less than 48 medical providers and addresses for only 2 of those providers," (2) failed to identify whether the providers in the initial disclosures for whom no addresses were provided are located in Ohio or California, and (3) failed to identify any providers who treated Plaintiff for the first time after January 2022, even though some documents that were produced show that Plaintiff was, in fact, treated by new providers after January 2022. (Doc. No. 122, PageID 1397.)

### D. Interrogatory No. 18

Interrogatory No. 18 requested, and Plaintiff responded, as follows:

18. Does Plaintiff claim a loss of earnings, wages or income as a result of the incident? If so, please state:

(a) The name and address of Plaintiff's employer at the time of the incident;

(b) The rate of pay with that employer;

(c) The amount of Plaintiff's claim, and show exactly how that amount was calculated;

(d) List each day, by specific date, that Plaintiff claims he/she has been unable to work because of the incident;

9

      (e)     If Plaintiff had a loss of income other than missing time from work, state the amount of the loss, the nature of the loss, and how the amount of the loss was calculated;

      (f)     Please sign the attached employer authorization and insert the name and address of the employer.

      **ANSWER:**  Plaintiff worked for Defendant IMI Material Handling at the time of the incident.  He does not recall his exact rate of pay but will supplement with tax returns and wage information.  Plaintiff has not been able to work since the date of the incident and has received temporary and total disability benefits.  Plaintiff will supplement with the employer authorization.  Plaintiff reserves the right to supplement and/or amend this answer.

(Feb. 20, 2024 Responses to Interrogatories, Doc. No. 116-1, PageID 1347.)

Plaintiff's answer to this interrogatory was almost entirely non-responsive. Although Plaintiff is seeking compensatory damages (Complaint, Doc. No. 1, PageID 24) and such awards can include lost earnings, wages or income, he has refused to provide his rate of pay, the amount of his lost earnings, or the method of calculating that amount. (Doc. No. 120, PageID 1370.) Plaintiff also failed to provide the promised tax returns, wage information, or executed employer authorization. (Reply, Doc. No. 116, PageID 1333.) The Court therefore ordered Plaintiff to show why it should not dismiss his claims against Clayco with prejudice. (Doc. No. 120, PageID 1370-71.)

In his Response, Plaintiff argued that he "has provided the information he can remember, and has signed authorizations to permit defendants to verify his claims." (Doc. No. 121, PageID 1381.) But despite having filed this lawsuit and demanded damages, Plaintiff did not provide the amount of his claimed damages for lost earnings, wages or income. He also did not address his failure to provide tax returns or wage information.

In its Reply, Clayco stated that Plaintiff provided tax transcripts and one W-2 on March 6, 2024, but did not provide his full tax returns. (Doc. 122, PageID 1396.) Plaintiff also did not provide the amount of his claimed lost earnings or related information. (*Id.*)

## II.    LAW AND ANALYSIS

If a party fails to comply with a Court order that requires it to provide or permit discovery, then the Court may issue an order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). In addition to or in lieu of issuing such an order, the Court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Before it dismisses an action as a sanction for a party's failure to comply with an order to permit or provide discovery, this Court must consider four factors:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). None of these factors is dispositive. *Id.* "[D]ismissal is proper if the record demonstrates delay or contumacious conduct." *Id.*

In this case, each of these factors weighs in favor of dismissing this action with prejudice. Furthermore, the record establishes a clear record of delay and contumacious conduct by Plaintiff, his counsel, or both. Accordingly, the undersigned recommends that the Court dismiss this matter with prejudice.

### A. Plaintiff Failed To Provide Discovery Due To Willfulness, Bad Faith Or Fault, And The Record Shows Delay And Contumacious Behavior.

Based upon the record before the Court, the undersigned finds that Plaintiff's failure to provide discovery is due to willfulness, bad faith, or fault. This factor requires "a clear record of delay or contumacious conduct." *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). "The plaintiff's conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings." *Carpenter v. City of Flint*, 723 F.3d 700, 705 (6th Cir. 2013) (cleaned up). Typically the plaintiff must bear some responsibility for the conduct, as "[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Carter v. Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).

Here, Plaintiff had more than seventeen months to provide discovery responses. On May 10 and October 23, 2023—the latter date being more than one year after Clayco propounded the discovery requests—Plaintiff's counsel promised Clayco's counsel and the Court that Plaintiff would provide the long-delinquent discovery responses. He did not do so. Moreover, Plaintiff's counsel repeatedly refused to respond to inquiries from

12

Clayco's counsel about the responses. Plaintiff has not provided any excuse, much less a valid excuse, for these violations of his discovery obligations and the applicable rules.

Furthermore, even after the Court granted Clayco's Motions to Compel, Plaintiff still failed to provide complete responses to Clayco's discovery requests. Astonishingly, although the undersigned previously concluded that Plaintiff's interrogatory answers were deficient because they did not provide the names and addresses of his providers, or state the amount of his claimed damages for lost earnings, wages or income, Plaintiff *still* has not provided this basic and essential information. His failure to do so is inexplicable.

Plaintiff "has the burden of showing that his failure to comply was due to inability, not willfulness or bad faith." *U.S. v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). In an effort to make this showing, Plaintiff has argued that he did (belatedly) comply with Clayco's discovery requests except for the executed authorizations, which he could not timely provide because he was out of the country when the Court granted Clayco's Motions to Compel (Doc. No. 121, PageID 1374-83.) These arguments are not well-taken.

### 1. Plaintiff has not provided complete discovery responses.

Having considered Plaintiff's arguments and Clayco's responses, the undersigned again concludes that Plaintiff did not provide complete responses to Interrogatory Nos. 17 and 18, and Request for Production Nos. 16 and 19, despite being ordered to do so.

With respect to Interrogatory No. 17 and Request for Production No. 16, Plaintiff responded by referring to more than 4,500 pages of documents that he had produced. In his latest filing, he relied both upon that reference <u>and</u> upon his response to Request for Production No. 1, which referenced all documents produced by all parties. Although he

did not say so, Plaintiff is presumably relying upon the business records option in Federal Rule of Civil Procedure 33(d).

The Court concludes that Plaintiff's reference to thousands of pages of documents is insufficient to comply with the Court's Order that Plaintiff "respond fully and without objection." (Doc. No. 120, PageID 1369-71.) Rule 33(d) only permits a party to produce business records in lieu of an answer "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Fed. R. Civ. P. 33(d). Plaintiff cannot reasonably assert that he must review thousands of pages of documents to identify all of his medical providers. By contrast, Clayco obviously will have to review each of these pages to compile a list of Plaintiff's providers. Thus, the burden on Clayco of deriving the requested information is not "substantially the same" as the burden on Plaintiff. *Id*.

Moreover, even if Plaintiff had made such a showing, he did not "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1). For both of these reasons, Plaintiff did not meet the requirements for invoking the business records option in Rule 33. *See, e.g.*, *Henderson v. Holiday CVS*, No. 09-80909, 2010 WL 11505168, at *2 (S.D. Fla. Aug. 11, 2010) (party may not respond to a discovery request with "a wholesale 'document dump' with an instruction to the requesting party to 'go fish'); *Brown v. Blue Cross & Blue Shield of Ala.*, No. 3:13-CV-00121, 2014 WL 3519100, at *3 (W.D.N.C. July 15, 2014) (party responding to interrogatory with citation to documents "must specify for each interrogatory the

documents that will actually reveal answers to the interrogatories. Document dumps or vague references to documents do not suffice").

To justify his failure to list his providers in his answer to Interrogatory No. 17, Plaintiff argued that he identified his medical providers in initial disclosures that he had provided in January 2022. But as Clayco points out, that list was neither complete (since it did not identify later providers that are known to exist) nor responsive (since it provided only a few addresses). Thus, Plaintiff's initial disclosures do not provide a complete response to this discovery request, which still has not been answered.

With respect to Request for Production No. 16, Plaintiff did not explain, and it is not evident, why Defendants would have produced "photographs, videotapes, notes, journals, diaries, or other documents" that depict Plaintiff's injuries and resulting adverse effects. Moreover, because Plaintiff's response did not identify responsive documents that were produced or state that there were no responsive documents, it is insufficient.

With respect to Interrogatory No. 18, Plaintiff still has not provided the amount of his claimed lost wages, earnings or income, or the methodology for calculating the same. Although he promised to produce tax returns and wage information—which might shed light on the issue but still would not be a substitute for Plaintiff's own description of the monetary relief that he seeks in this case—Clayco states that Plaintiff has produced just a few such documents. Plainly, Plaintiff's response to this request is insufficient.

Finally, with respect to Interrogatory Nos. 17 and 18, and Request for Production No. 19, it is still unclear whether Plaintiff has provided properly executed authorizations. Thus, the Court cannot conclude that Plaintiff has fully complied with this request.

### 2.      Plaintiff's trip abroad does not excuse an 18-month failure.

Plaintiff has argued that his "inability . . . to produce current medical, insurance, and employment authorizations stems from his being out of the country at the time the Court entered its February 5, 2024 order and having only recently returned." (Doc. No. 121, PageID 1383.) But Clayco initially requested those documents more than a year-and-a-half ago. Plaintiff was out of the country for only two months. (*Id*. at PageID 1382.) Plaintiff offered no explanation as to why he did not provide the authorizations before he left the country. He also did not explain why he did not use email or overnight mail to provide the authorizations while he was abroad. Thus, this excuse falls flat.

### 3.      Plaintiff bears some culpability for these failures.

Although some (and perhaps many) of these failures likely are the fault of Plaintiff's counsel, Plaintiff also bears some culpability. Plaintiff did not notify his attorney that he would be abroad for an extended period, and did not promptly provide the requested (but improperly executed) authorizations. (Doc. No. 121, PageID 1381-82.) Furthermore, after counsel contacted Plaintiff and asked him to provide wet-ink signatures on the authorizations, Plaintiff delayed an additional month before executing and returning the authorizations (assuming that he in fact did so). (*Id*. at PageID 1382.)

Plaintiff argued that he did not execute the authorizations "because he was out of the country, not because he was resisting authority or being disobedient." (Doc. No. 121, PageID 1382.) But an "intent to thwart judicial proceedings" is not necessary to establish contumacious behavior, *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (internal quotation omitted). The first factor will also weigh in favor of

16

dismissal if the plaintiff evinces "reckless disregard for the effect of his conduct on those proceedings." *Id*.

Here, the record supports a finding of contumacious behavior. Initially, Plaintiff failed to execute the authorizations for approximately seventeen months after they were requested—a delay for which he has provided no excuse. Then, after this Court ordered Plaintiff to execute the authorizations, he waited a month before he did so improperly. Finally, after his attorney asked him to execute the authorizations properly, he delayed another month before doing so (assuming that he indeed did execute them). Through these actions and, more importantly, through his long and unexplained period of inaction, Plaintiff exhibited reckless disregard for the effect of his conduct on this litigation.

Accordingly, the undersigned finds that Plaintiff's failure to provide discovery is due, at least in part, to his own willfulness, bad faith, or fault. Furthermore, the other failures described above—including Plaintiff's repeated failures to communicate with Clayco about the discovery responses, and his failures to honor his promises to Clayco and the Court that he would provide the discovery responses—are also due to willfulness, bad faith or fault rather than an inability to provide the requested discovery.

### B.    Defendant Clayco was prejudiced by Plaintiff's failures.

"The key to finding prejudice . . . is whether the defendants wasted time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 740 (6th Cir. 2008) (cleaned up). The record plainly establishes that this prejudice has occurred. Plaintiff failed to comply with its discovery obligations for approximately a year and a half. During that time,

17

Clayco repeatedly and unsuccessfully attempted to communicate with Plaintiff's counsel about the delinquent responses, engaged in multiple discovery conferences that might otherwise have been unnecessary, and was forced to draft, file, and brief *two* separate motions to compel, as well as replies to the Court's Orders to Show Cause.

The prejudice that Clayco has suffered goes beyond these harms, however. Clayco was also significantly prejudiced by Plaintiff's long delay in providing (if he has indeed provided) the requested authorizations. It is worth noting that the purpose of such an authorization is to enable Clayco's counsel to subpoena records from third parties that are private or confidential, and that otherwise would not be provided. Only after Clayco has obtained these records—through a process that can take considerable time—will it have the necessary information to question Plaintiff and other witnesses about the facts in those records. For these reasons, authorizations should be provided at the outset of discovery. Plaintiff's inexplicable failure to provide them has greatly hampered Clayco's ability to understand the facts of this case, assess its potential liability, prepare its experts, depose witnesses, prepare motions for summary judgment, and prepare for trial.

On this record, it is clear that Clayco has been prejudiced. The second factor therefore also weighs in favor of a dismissal of Plaintiff's claims with prejudice.

**C.     Plaintiff was repeatedly warned that failure to cooperate would lead to dismissal.**

Plaintiff was first put on notice of the possibility of an involuntary dismissal nearly a year ago, on May 31, 2023, when Defendant Clayco filed its First Motion to Compel (Doc. Nos. 101, 102.) In that Motion, Clayco sought sanctions "up to and

including[] striking Plaintiff's pleadings." (Doc. No. 101, PageID 1253.) *See Ocelot Oil Corp. v. Sparrow Indus.*, 842 F.2d 1458, 1462 (10th Cir. 1988) (striking of pleadings is equivalent to involuntary dismissal) (cited with approval by *Bennett v. Gen. Caster Serv. of N. Gordon Co.*, 976 F.2d 995, 997 (6th Cir. 1992)).

On November 27, 2023, Defendant Clayco filed its Second Motion to Compel. (Doc. Nos. 112, 113.) In that Motion, Clayco explicitly requested that the Court dismiss Plaintiff's claims for failure to prosecute. (Doc. No. 112, PageID 1300.)

In its Order granting Clayco's Motions to Compel, the Court noted that it had not previously given Plaintiff explicit warning of the possibility of dismissal. (Doc. No. 114, PageID 1326.) Therefore, the Court declined to "consider dismissal **at this time**." (*Id.* at PageID 1327 (emphasis added).) However, the Court stated: "**Plaintiff is *specifically cautioned* that any further evidence of delay or contumacious behavior – including any failure to fully and timely comply with this Order – may result in the dismissal of his claims.**" (*Id.* at PageID 1326-27 (emphases in original).) Thus, Plaintiff was explicitly warned that a failure to provide discovery could lead to dismissal.

In his Response to the Court's February 5, 2024 Order, Plaintiff's counsel stated that he "underst[ood] and appreciate[d] the Court's clear frustration on the present issue." (Doc. No. 115, PageID 1329.) Even so, as detailed above, Plaintiff continued to fail to comply with the Court's Order and provide the requested discovery. Therefore, the Court again warned Plaintiff that it may dismiss his claims against Clayco, and gave him the opportunity to show why such a sanction should not be imposed. (Doc. No. 120, PageID 1370-71.)

Plaintiff had ample warning that his claims may be dismissed due to his failure to provide discovery. Therefore, the third factor weighs in favor of dismissal with prejudice.

### D. The Court has imposed and considered less drastic sanctions.

Involuntary dismissal "is a harsh sanction which the court should order only in extreme situations." *Carter v. Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). The Court should order dismissal with prejudice only if "a lesser sanction would not better serve the interests of justice." *Consolidation Coal Co. v. Gooding*, 703 F.2d 230, 232-33 (6th Cir. 1983). Moreover, "where the district court has not manifested consideration of less drastic sanctions, it is more difficult . . . for [the Court of Appeals] to conclude that the district court exercised its discretion with appropriate forethought." *Harmon v. CSX Transp.*, 110 F.3d 364, 368-69 (6th Cir. 1997). Therefore, the undersigned will expressly consider whether less drastic sanctions could and should be imposed at this juncture.

As a very mild sanction, the Court could "call a status conference *sua sponte* [and] provid[e] counsel with an opportunity to explain the missed deadlines." *Kovacic v. Tyco Valves & Controls*, 433 F. App'x 376, 383 (6th Cir. 2011) (affirming dismissal after district court took these actions and explicitly "indicated its concerns with counsel's failure to meet pretrial deadlines"). In this case, Judge Rice already took this step in May 2023 and October 2023. Those efforts proved to be unavailing, as detailed above.

A more substantial sanction is an order "compelling [the plaintiff] to respond to the defendant['s] discovery requests within fourteen days, rather than granting [an] initial motion to dismiss outright," *Marsh v. Rhodes*, No. 17-1211, 2017 WL 7833767, at *3

20

(6th Cir. Dec. 14, 2017). The Court previously entered such an order (Doc. No. 114).

Nevertheless, Plaintiff failed to comply fully with Clayco's discovery requests.

Another substantial sanction is an order "imposing costs" on the party at fault, as

is required by Rule 37. *Mager v. Wis. Ctrl. Ltd.*, 924 F.3d 831, 841 (6th Cir. 2019). The

Court also entered such an order (Doc. No. 120), but it did not have the desired effect.

Other available sanctions include staying the proceedings or holding Plaintiff in

contempt until he fully complies with the Court's February 5, 2024 Order. Fed. R. Civ. P.

37(b)(2)(A). However, because this case was filed nearly three years ago—and because

Clayco needs the very basic missing information to formulate and mount a defense in this

litigation—the resulting additional delay is difficult to justify and would be inadvisable.

The Court also is empowered to enter an order that establishes certain facts, strikes

claims or defenses, prohibits the introduction of evidence, or strikes pleadings or portions

thereof. Fed. R. Civ. P. 37(b)(2)(A). There are two reasons why these sanctions would be

ineffective. First, because Plaintiff failed to provide very basic information about his

claims (i.e., the amount and method of calculating his lost earnings, and the names and

addresses of his medical providers), it does not appear that the Court could enter any

adverse evidentiary ruling or established fact that would cure the prejudice to Clayco.

Second, because Plaintiff has asserted claims against other Defendants in this case, an

order striking part or all of the claims in the Complaint would risk being overbroad.

Accordingly, the undersigned concludes that no available sanction is likely to

compel Plaintiff to comply with the Court's Order and remedy the prejudice to Clayco.

Instead, after eighteen months of failing to produce the requested discovery, multiple

status conferences, an order to compel, two orders to show cause, and explicit warnings that Plaintiff's "unexcused and inexcusable" behavior could lead to dismissal of his claims, no sanction short of dismissal will "serve the interests of justice" and "protect the integrity of the pretrial process." *Carpenter v. City of Flint*, 723 F.3d 700, 710 (6th Cir. 2013) (collecting cases) (internal quotations omitted). *See also Harmon v. CSX Transp., Inc.* 110 F.3d 364 (6th Cir. 1997) (affirming dismissal on similar facts where plaintiff failed to answer interrogatories for over a year, failed to respond to a motion to compel, and failed to fully comply with an order compelling discovery).

## III.   CONCLUSION

In sum, for the reasons set forth above, the undersigned **RECOMMENDS** that the Court **DISMISS WITH PREJUDICE** Plaintiff's claims against Defendant Clayco as a sanction for Plaintiff's failures to provide discovery and comply with this Court's orders. *See* Fed. R. Civ. P. 37(b)(2). In addition, the undersigned **RECOMMENDS** that the Court order Plaintiff, his attorney, or both to pay Clayco's reasonable expenses, including its attorney's fees, caused by Plaintiff's failures. *See* Fed. R. Civ. P. 37(b)(2)(C).

**IT IS SO RECOMMENDED.**

*/s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

<u>Procedure on Objections</u>

If any party objects to this Report and Recommendation (Report), that party may, within fourteen (14) days of the date that this Report was filed, file and serve written objections to specific findings or recommendations along with supporting authority for the objection(s). Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. A District Judge will then make a *de novo* determination of the portions of the report, findings, or recommendations to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, this Court's findings or recommendations, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are advised that a failure to object to the Report will result in a waiver of a party's right (1) to have the District Judge review the Report *de novo* and (2) to appeal a decision of the District Court adopting the Report. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).