IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

PLINIO ALVARADO          :
QUINONEZ,

    Plaintiff,                    Case No. 3:21-cv-159

    v.                    :          Judge Walter H. Rice

IMI MATERIAL HANDLING          Mag. Judge Caroline H. Gentry
LOGISTICS, INC., et al.,       :

    Defendants.

---

DECISION AND ENTRY ADOPTING REPORT AND
RECOMMENDATIONS OF MAGISTRATE JUDGE (DOC. #123) AND
OVERRULING OBJECTIONS THERETO (DOC. #126); PLAINTIFF
PLINIO ALVARADO QUINONEZ'S CLAIMS AGAINST DEFENDANT
CLAYCO, INC. (DOC. #1) ARE DISMISSED WITH PREJUDICE;
JUDGMENT SHALL ULTIMATELY ENTER IN FAVOR OF CLAYCO AND
AGAINST PLAINTIFF; PLAINTIFF AND HIS COUNSEL ARE JOINTLY
AND SEVERALLY LIABLE FOR COSTS AND ATTORNEY FEES
INCURRED BY CLAYCO DUE TO PLAINTIFF'S FAILURE TO COMPLY
WITH FEBRUARY 5, AND APRIL 4, 2024, ORDERS; CLAYCO SHALL
SUBMIT WITHIN TWENTY-EIGHT (28) DAYS A CALCULATION OF
COSTS AND FEES INCURRED; PLAINTIFF AND HIS COUNSEL MAY
OBJECT WITHIN FOURTEEN (14) DAYS OF CLAYCO'S SUBMISSION;
PLAINTIFF IS ORDERED TO SHOW CAUSE WITHIN TWENTY-EIGHT
(28) DAYS WHY JOHN DOE DEFENDANTS 1-7 SHOULD NOT BE
DISMISSED WITHOUT PREJUDICE FOR FAILURE TO SERVE;
CONSIDERATION OF ALTERNATIVE DISPUTE RESOLUTION

---

Before the Court are the Report and Recommendations of Magistrate Judge

Caroline H. Gentry, recommending that Plaintiff Plinio Alvarado Quinonez's claims

against Defendant Clayco, Inc. ("Clayco"), be dismissed with prejudice for failure

to prosecute his claims against Clayco and that Plaintiff, his attorney, or both should be required to compensate Clayco for costs and attorney fees incurred due to Plaintiff's failure to so prosecute. (Report, Doc. #123, PAGEID 1427). Also before the Court are Plaintiff's Objections to the Report (Doc. #126) and Clayco's Response to Objections (Doc. #128). For the reasons set forth below, the Report is ADOPTED, the Objections are OVERRULED, and Plaintiff's claims against Clayco are DISMISSED WITH PREJUDICE. In addition, the Court TAXES Clayco's costs and reasonable attorney fees against Plaintiff and his counsel jointly and severally.

## I. Factual Background and Procedural History[1]

Clayco propounded Interrogatories (ROGs) and Requests for Production of Documents (RFPDs) upon Plaintiff on September 14, 2022. (Notice of Disc., Doc. #87). Counsel for Clayco contacted counsel for Plaintiff on at least two occasions thereafter, reminding the latter of Plaintiff's obligations to respond. Nonetheless, no complete responses were produced; nor did Plaintiff seek an extension of time to respond completely. (Oct. 21, 2022, Corr., Doc. #101-2; Jan. 19, 2023, Corr., Doc. #101-3; Memo. in Support of Sanctions, Doc. #102, PAGEID 1262-63). On May 10, 2023, the undersigned conducted a status conference, at which Plaintiff's counsel stated that he would review outstanding discovery requests. However, despite a follow-up email from Clayco's counsel on May 12, 2023, Plaintiff never responded to the requests (Doc. #123, PAGEID 1407, citing May 10, 2023,

---

[1] The factual background was set forth at length in the Report (Doc. #123, PAGEID 1406-16), and the Court adopts that discussion and incorporates it by reference.

2

Minute Entry; May 12, 2023, Corr., Doc. #101-4; Doc. #102, PAGEID 1264). On

May 31, 2023, Clayco filed a Motion to Compel and for Sanctions ("First Motion").

Counsel for Plaintiff represented that he would respond to Clayco's discovery

requests by November 3, 2023. The Court deferred ruling on this Motion based

upon this representation; yet, despite a reminder email from Clayco's counsel,

Plaintiff still did not fully respond. (*Id*. at PAGEID 1408, citing Second Motion,

Doc. #112, PAGEID 1298, ¶¶ 11-12; Nov. 13, 2023, Corr., Doc. #112-1; Memo.

in Support of Second Motion, Doc. #113, PAGEID 1314-15).

On November 27, 2023, Clayco filed its Second Rule 37 Motion to Compel

Discovery and for Sanctions ("Second Motion"). Clayco asked that any objections

Clayco might raise be deemed waived, or that the case be dismissed for failure to

prosecute. (Doc. #112, PAGEID 1299-1300). On February 5, 2024, Magistrate

Judge Caroline H. Gentry sustained both motions, concluding that "Plaintiff's

unexplained failures to comply with that [discovery response] deadline and respond

to Clayco's repeated efforts to resolve this dispute are unexcused and

inexcusable." (Doc. #114, PAGEID 1325). The Court ordered Plaintiff to respond

"fully and without objection" to Clayco's discovery requests, and cautioned

Plaintiff that further delay could result in dismissal. (*Id*. at PAGEID 1326-27). The

Magistrate Judge subsequently concluded that Plaintiff had not complied with the

February 5, 2024, Order. Thus, this Court, on April 4, 2024, issued an Order to

Show Cause why Plaintiff's claims should not be dismissed with Prejudice.

"Plaintiff filed a Response[,] and Defendant Clayco filed a Reply." (Doc. #123, PAGEID 1409, citing Order, Doc. #120, Resp., Doc. #121, Reply, Doc. #122).

On May 7, 2024, the Magistrate Judge issued the Report under discussion herein. In the Report, the Magistrate Judge noted several responses by Plaintiff that, despite months of prodding, were deficient and incomplete. *First*, in RFPD 16, Clayco requested "[a]ny and all photographs, videotapes, notes, journals, diaries, or other documents which depict, describe, relate or refer to any adverse effect of any injuries you suffered as a result of the incident alleged in Plaintiff's Complaint." In response, Plaintiff "refer[red] to and relie[d] upon the documents produced and incorporated by reference in his response to Request No. 1, including those Bates labeled as Quinonez00001 to Quinonez04588 and any documents produced by any other party in this matter." (Doc. #123, PAGEID 1409-10, quoting Feb. 20, 2024, RFPD Resp., Doc. #116-2, PAGEID 1358)). The Magistrate Judge found that, his passing reference to a 4,500-page production notwithstanding, Plaintiff failed to "identify which, if any, of these documents constitute 'photographs, videotapes, notes, journals, diaries, or other documents' that depict Plaintiff's injuries and resulting adverse effects." Moreover, even Plaintiff's attempt to incorporate by reference his response to RFPD 1 was insufficient, because that response did not describe the documents with any specificity. (*Id*. at PAGEID 1410-11).

*Second*, as to RFPD 19, the Magistrate Judge noted that, despite Clayco requesting in September 2022 that Plaintiff execute and provide to Clayco medical

4

and other record release authorizations, and despite the Court ordering Plaintiff to do so by February 19, 2024, Plaintiff did not attempt to provide them until March 6, 2024. Even then, Clayco had to inform Plaintiff that the authorizations were improper because they were not notarized. Plaintiff then claimed to have sent the proper authorizations to Clayco on April 18, 2024, but Clayco had not received them as of April 25. (Doc. #123, PAGEID 1411-12, citing Doc. #120, PAGEID 1369-70; Doc. #121, PAGEID 1381-82; Doc. #122, PAGEID 1396).

*Third*, in ROG 17, Clayco asked Plaintiff to disclose all medical treatment since the date of the accident, including the amount incurred. Plaintiff responded by referring to his initial disclosures and the 4,500-page production and stating that he does not have itemized bills; however, he also responded that he has an outstanding medical lien of approximately $725,000 related to the incident. The Magistrate Judge concluded that this answer was non-responsive because, as Clayco noted, the initial disclosures listed only two of the forty-eight medical sources, and Plaintiff had not identified anywhere his treating sources from after January 2022, despite there being records of treatment since that time. (Doc. #123, PAGEID 1413-14, quoting Feb. 20, 2024, ROG Resp., Doc. #116-1, PAGEID 1346-47; Doc. #120, PAGEID 1370-71). *Finally*, in ROG 18, Clayco asked Plaintiff for details regarding his wage and non-employment economic losses that he had claimed. Plaintiff, despite claiming to have provided all the information he could remember, had not provided copies of his tax returns or even a precise amount of lost wages claimed. Thus, the Magistrate Judge concluded, Plaintiff

had not responded fully to the discovery requests as ordered by the Court, and

thus had not shown cause to avoid dismissal. (*Id*. at PAGEID 1415-16, 1418,

quoting Doc. #121, PAGEID 1381; citing Doc. #122, PAGEID 1396).

Turning to sanctions, the Magistrate Judge applied the four factors set forth

in *Mager v. Wisconsin Central Ltd.*, under which the Court must consider whether:

(1) The party's failure is due to willfulness, bad faith, or fault;

(2) The adversary was prejudiced by the dismissed party's conduct;

(3) The dismissed party was warned that failure to cooperate could
lead to dismissal; and

(4) Less drastic sanctions were imposed or considered before
dismissal was ordered.

*Mager*, 924 F.3d 831, 837 (6th Cir. 2019), quoting *United States v. Reyes*, 307

F.3d 451, 458 (6th Cir. 2002).

*First*, the Magistrate Judge rejected Plaintiff's implicit invocation of Rule

33's "business records option" through his reference to the 4,500-page document

production. (Doc. #123, PAGEID 1418-19, citing FED.R.CIV.P. 33(d)). The

Magistrate Judge noted that that option is available only "if the burden of deriving

or ascertaining the answer will be substantially the same for either party," and if

the producer identifies the records to be reviewed with such specificity that a

particular document can be retrieved from the bulk production as easily by the

recipient as by the producer. Plaintiff failed to do either of these things. Plaintiff's

remaining responses were deficient for the reasons discussed above. (*Id*. at

PAGEID 1419-20, quoting FED.R.CIV.P. 33(d)(1); citing *Brown v. Blue Cross & Blue*

*Shield of Ala.*, No. 3:13-cv-121, 2014 WL 3519100, \*3 (W.D.N.C. Jul. 15, 2014); *Henderson v. Holiday CVS, L.L.C.*, No. 09-80909, 2010 WL 11505168, \*2 (S.D. Fla. Aug. 11, 2010)).

Moving to the fault issue, the Magistrate Judge noted that Plaintiff attempted to explain the delay in signing and having notarized the authorizations between the March 6, 2024, reminder email and April 18, 2024, transmission by stating that he was out of the country during that time. However, that statement does not explain why Plaintiff failed to execute the releases in the seventeen months between when he received the discovery requests and when the Court ordered him to respond. Plaintiff also does not explain why he waited more than a month after that order even to attempt to sign and transmit the releases, or why he could not sign the releases while he was abroad (Doc. #123, PAGEID 1421-22). Plaintiff's delays, while perhaps not done with the intent to thwart proceedings, were nonetheless in contravention of judicial authority and thus, were contumacious conduct. (*Id*. at PAGEID 1421, quoting *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)). Further, Plaintiff's delays could not be attributed solely to counsel, because he "did not notify his attorney that he would be abroad for an extended period[.]" (*Id*.). Thus, the Magistrate Judge concluded, Plaintiff's failure to comply was willful, and the first *Mager* factor weighed in favor of dismissal. (*Id*. at PAGEID 1421-22).

The Magistrate Judge also concluded that the second *Mager* factor weighed in favor of dismissal, as Plaintiff's delay in providing the authorizations prevented

Clayco from subpoenaing third parties for Plaintiff's treatment records, meaning that Clayco has been unable to formulate a defense. (Doc. #123, PAGEID 1423). The third factor also weighed in favor, as Clayco had twice moved for dismissal of Plaintiff's claims against it, and the Court had warned Plaintiff that failure to show cause *would* result in dismissal of those claims. (*Id*. at PAGEID 1423-24). Finally, the Court had imposed the lesser sanctions of: convening status conferences and requiring counsel to explain on record the reasons for delay; granting Clayco's First and Second Motions to Compel; and taxing Clayco's costs and attorney fees against Plaintiff. However, those sanctions have not been effective. (*Id*. at PAGEID 1425-26, citing *Mager*, 924 F.3d at 840; *Kovacic v. Tyco Valves & Controls*, 433 F. App'x 376, 383 (6th Cir. 2011)). Further, and importantly for reasons discussed below, Plaintiff's claims against other Defendants remain pending, and thus, any "order that establishes certain facts, strikes claims or defenses, prohibits the introduction of evidence, or strikes pleadings or portions thereof" would be overbroad. (*Id*. at PAGEID 1426, citing FED.R.CIV.P. 37(b)(2)(A)). Finally, staying the proceedings or imposing lesser sanctions would only further prejudice Clayco by further delaying the case, which is no closer to resolution today than when it was filed nearly three years ago.

In sum, the Magistrate Judge concluded, because of Plaintiff's "unexcused and inexcusable behavior" dismissal with prejudice against Clayco will "serve the interests of justice" and "protect the integrity of the pretrial process." Thus, the fourth *Mager* factor weighed in favor of dismissal. (Doc. #126, PAGEID 1427,

8

quoting *Carpenter v. City of Flint*, 723 F.3d 700, 709 (6th Cir. 2013)).

Consequently, the Magistrate Judge recommended: (1) dismissing Plaintiff's claims

against Clayco with prejudice, and (2) awarding Clayco's costs and reasonable

attorney fees that were incurred as a result of "Plaintiff's failures." (*Id.*).

      In his Objections, Plaintiff notes that, after the Court's February 5, 2024,

Order to provide complete discovery responses within fourteen days, he provided,

on February 20, 2024, what he considered to be complete discovery responses

and an explanation why an award of attorney fees was not warranted. (Objs.,

Doc. #126, PAGEID 1456). That same day, Plaintiff's counsel provided all

responsive documents, approximately 4,500 pages. (*Id.* at PAGEID 1458). "[T]he

documents were organized and indexed in two separate ways to aid in their review

quickly and easily. As additional information has been received—specifically,

executed authorizations from Plaintiff and wage information for Plaintiff—that

information has also been provided to defense counsel." (*Id.* at PAGEID 1458-59).

      On March 6, 2024, Plaintiff's counsel transmitted to Clayco's counsel the

medical record release authorizations that had been electronically signed by

Plaintiff. After Clayco's counsel stated that notarized, "wet ink" signatures were

necessary for the records to be released, on March 18, 2024, Plaintiff's counsel

stated that he was working to get those signatures but had just learned that

Plaintiff was traveling outside the United States. (Doc. #126, PAGEID 1456-57,

citing Mar. 13, 2024, email, Doc. #126-1). Ten days later, Plaintiff's counsel

informed Clayco's counsel that Plaintiff was returning to the United States and also

9

proposed the week of May 13, 2024, for Plaintiff's deposition. (*Id*. at PAGEID 1457). Plaintiff sent the wet ink authorizations, which were delivered to Clayco's counsel on April 29, 2024. (*Id*., citing USPS Tracking, Doc. #126-2, PAGEID 1476).

Plaintiff argues the Magistrate Judge was incorrect with respect to each of the four discovery responses. *First*, Plaintiff's response to ROG 17 was not a "data dump"; rather, Plaintiff provided the specificity under Rule 33(d) in multiple ways. In his Rule 26(a) initial disclosures, Plaintiff stated that he was treated at Kettering Memorial Hospital, "with the address and phone number for Kettering Memorial Hospital, and then listed the providers that treated him at Kettering." (Doc. #126, PAGEID 1459, citing Resp., Doc. #121, PAGEID 1374). "Likewise, he identified his treatment at the Centre for Neuro Skills ('CNS') in Bakersfield, CA, the address and phone number for CNS, and then providers at CNS who have treated Plaintiff." (*Id*., citing Doc. #121, PAGEID 1374). In response to ROG 17, Plaintiff provided the above-described 4,500 pages of documents, with (1) a sequential Bates-range "and the response to request for production number one included a chart identifying the applicable time periods for each BATES range"; and (2) "the same records in 174 individual PDF files that identified the date of service and the provider . . . . Those files also contain the address and contact information for the treating provider on the individual records." (*Id*. at PAGEID 1460). Further, Plaintiff had worked earnestly since March 2022 to obtain a copy of his workers' compensation lien, but he could not obtain the copy until March 2024; Plaintiff

10

claims that he promptly supplemented his response to ROG 17 once he received the lien information. (*Id*. at PAGEID 1460-61, citing *Robinson v. Bates*, 112 Ohio St. 3d 17, 2006-Ohio-6362, ¶ 9).

*Second*, in response to ROG 18 asking for Plaintiff's lost wage and income information, Plaintiff stated that he had not worked since the day of the injury and that, due to the injury, he could not remember his exact rate of pay. (Doc. #126, PAGEID 1461). On March 6, 2024, Plaintiff's W-2 information from 2014 through 2019 was provided to Clayco's counsel, from which Plaintiff's expert ascertained lost earnings as $321,798.00. (*Id*.). *Third*, as to RFPD 16, asking for documents supporting Plaintiff's injury claims, Plaintiff produced medical and workers' compensation records since the incident; Occupational Safety and Health Administration ("OSHA") investigation into the fall; and documents regarding the fall and injuries. "Again, those records were produced both in a sequential BATES range and as individual files by date of service and provider." (*Id*. at PAGEID 1462). The OSHA documents "discuss not only the failures that lead to Plaintiff's injuries, but the immediate and noticeable severity of Plaintiff's injuries. The investigation makes reference to the types of injuries suffered by Plaintiff and his immediate need for emergent care and resulting hospitalization[,]" while Plaintiff also produced his personal notes from his injury. (*Id*. at PAGEID 1462-63). Plaintiff claims to have no further responsive documents. (*Id*. at PAGEID 1463). *Finally*, as to RFPD 19, which asked for medical records, Plaintiff emphasizes

counsel's earnest efforts to get wet ink authorizations and asserts that he has now responded fully. (*Id*. at PAGEID 1463-64 n.1).

Plaintiff notes that the United States Court of Appeals for the Sixth Circuit considers dismissal a harsh sanction that should only be imposed for: a plaintiff engaging in contumacious conduct, having been expressly warned that failure to comply will result in dismissal, and that lesser sanctions have been considered and found to be inadequate. (Doc. #126, PAGEID 1464, citing *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997)). Plaintiff argues that he was not warned of dismissal as a possible sanction until the Magistrate Judge's February 5, 2024, Order; thereafter, he claims, he worked diligently to complete discovery, producing over 4,500 pages of documents in two readily-accessible formats and supplementing production promptly when necessary. (*Id*. at PAGEID 1464-65). He claims that, because of his full compliance and his contention that "[d]ismissal at this juncture would not promote resolution on the merits, and this case can still be resolved" by the deadlines set forth in the Court's scheduling order, dismissal is not an appropriate sanction. (*Id*. at PAGEID 1465).

Plaintiff also argues that a further award of attorney fees would be procedurally inappropriate and substantively unjust. He asserts that the $3,000 attorney fee payment made on April 4, 2024, was compensation for any delays in discovery through February 5, 2024, and that he and his counsel have engaged in no conduct since then that would warrant an additional award of fees. (Doc. #126, PAGEID 1465, citing Doc. #120, PAGEID 1371). It was not until Clayco's

April 25, 2024, reply brief, that it raised arguments in support of an additional fee award: (1) Clayco had not received the record release authorizations; (2) Plaintiff had not provided the amount of lost wages or how damages were calculated; (3) Plaintiff's response to ROG 17 was insufficient; and (4) Plaintiff had not provided a date for a deposition. (*Id*. at PAGEID 1466, citing Reply, Doc. #122).

Plaintiff asserts that all four arguments are unfounded. *First*, Plaintiff had provided electronic signatures in March, and that the wet ink signatures were *en route* to Clayco at the time Clayco filed its reply. *Second*, the claim for lost wages required an expert calculation in response to ROG 18 that Plaintiff was not qualified to give. However, Plaintiff provided the report of Cliff Hawley, his expert, and the documents upon which he relied, on May 13, 2024, in accordance with expert disclosure deadlines. (*Id*. at PAGEID 1466-67). *Third*, "Plaintiff identified the majority of his medical providers related to his injuries in January 2022." He provided additional records in February 2024, and was not aware of any supposed incompleteness until Clayco's April 25, 2024, filing. Further, Clayco's statement that it could not "even discern whether those providers were located in Ohio or California" rings hollow, since the produced records "identify[] the service location with corresponding address information requested in Interrogatory No. 17." (*Id*. at PAGEID 1467). *Finally*, contrary to Clayco's argument, Plaintiff had proposed a deposition date. (*Id*.). Taken together, Plaintiff asserts, there is no basis for the Magistrate Judge to conclude that he had failed to comply with the February 5,

2024, Order and, consequently, no basis upon which to impose sanctions or attorney fees. (*Id*. at PAGEID 1467-68, citing FED.R.CIV.P. 37(b)(2).

In the Response, Clayco argues that Plaintiff had not complied with his discovery response obligations with respect to any of the four discovery responses at issue—ROGS 17 and 18 and RFPDs 16 and 19. *First*, as to ROG 17, Clayco argues that Plaintiff merely provided a "single sentence of more than 48 medical providers and a document dump of nearly 5,000 pages[.]" (Doc. #128, PAGEID 1484-85). Plaintiff only listed the addresses for two of the forty-eight treating sources identified; he also did not state the healthcare agency with whom those sources were affiliated, or even whether they were based in Ohio or California. Nor did Plaintiff supplement the initial disclosures even after he was treated by sources not listed in the disclosures. Thus, Clayco claims that it is no closer now to knowing all of Plaintiff's treating medical sources than when it propounded discovery. (*Id*. at PAGEID 1483-84). *Second*, as to ROG 18, dealing with the amount and types of damages sought, Clayco notes that, despite Plaintiff's expert adding, "Lost Household Services" as a damages category in his report, Plaintiff did not supplement his answer to ROG 18; nor did he provide all the documents and information provided to his expert. (*Id*. at PAGEID 1486, citing Resp. to ROGs, Doc. #116-1, PAGEID 1347; Hawley Report, Doc. #128-2). "Thus, an entirely new category of damages is now being claimed and Plaintiff continues to fail to produce the documents and discovery responses from which Clayco can evaluate potential damages and defend itself." (*Id*.).

*Third*, Clayco's request in RFPD 16 was for "[a]ny and all photographs, videotapes, notes, journals, diaries, or other documents which depict, describe, relate or refer to any adverse effect of any injuries suffered." (Doc. #128, PAGEID 1486 (alterations in original), quoting Resp. to RFPD, Doc. #116-2, PAGEID 1358). Yet, despite this specificity:

> Plaintiff does not identify which, if any, of these documents constitute photographs, videotapes, notes, journals, diaries, or other documents that depict Plaintiff's injuries and resulting adverse effects. Plaintiff has not supplemented his responses, nor has he amended the response to identify the documents as expressly described by the Court. Plaintiff has been directed, multiple times, to fully respond to the discovery responses.

(*Id.* at PAGEID 1487). Rather, Plaintiff has ignored this Court's entreaties to supplement or modify the response and merely attempted to explain why a 4,500-page indexed document dump is sufficient. Clayco argues that this obstinance has significantly prejudiced Clayco. (*Id.* at PAGEID 1487-88, quoting *Schafer*, 529 F.3d at 740). *Finally*, Plaintiff did not provide valid record release authorizations until at least April 29, 2024, "eighty-five (85) days from the date of the order, and more than a year and a half after they were requested. If Clayco can decipher from the 5,000 pages of documents and the list of doctors' names without addresses, it will now be able to request medical records." (*Id.* at PAGEID 1488).

Clayco asserts that, in addition to Plaintiff's contumacious conduct, the other *Mager* elements are met. Clayco has been prejudiced for the reasons set forth *supra*. Moreover, Plaintiff was expressly warned on two separate occasions that failure to comply with Clayco's discovery requests may result in dismissal of

15

claims. Yet, despite these warnings and orders, and having more than twenty months to respond fully to discovery requests, Plaintiff has not done so. (Doc. #128, PAGEID 1488). Thus, Clayco argues, dismissal with prejudice is appropriate. (*Id*. at PAGEID 1488-89).

The matter is now ripe for decision.

## II.    Applicable Law

"[T]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Schafer*, 529 F.3d at 736  (internal quotation marks and citation omitted).  The sanction is particularly harsh because involuntary dismissal is with prejudice. *See* FED.R.CIV.P. 41(b) (A dismissal for failure to prosecute "operates as an adjudication on the merits.").  The Magistrate Judge correctly set forth and applied the four *Mager* factors that the Court must use to determine whether to dismiss claims involuntarily:

(1) whether the party's failure is due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dismissed party's conduct;

(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Mager*, 924 F.3d at 837 (internal citation omitted).[2]

"Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct." *Reyes*, 307 F.3d at 458. "Contumacious conduct refers to behavior that is perverse in resisting authority and stubbornly disobedient." *Carpenter*, 723 F.3d at 704-05 (internal quotation marks and citation omitted). A party "is prejudiced by a plaintiff's dilatory conduct if the defendant is required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Id*. at 707 (brackets in original) (citation omitted). Orders of involuntary dismissal are often reversed "when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Harris v. Callwood*, 844 F.2d 1254, 1256 (collecting cases). While Rule 37(b) requires the Court to consider lesser sanctions, *Mager*, 924 F.3d at 840, "[w]e have never held that a district court is without power to dismiss a complaint, as the first and only sanction, and we are loath to require the district court to incant a litany of lesser available sanctions." *Fharmacy Records v. Nassar*, 379 F. App'x 522, 524 (6th Cir. 2010), quoting *Schafer*, 529 F.3d at 738 (cleaned up).

---

[2] "[W]e note, as other circuits have found, that the factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same." *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).

### III.  Analysis

#### A.  Dismissal

##### 1.  Contumacious Conduct

In the Report, the Magistrate Judge noted that Plaintiff failed to respond to discovery responses for seventeen months, broke promises to respond to requests, and never proffered a good reason.  Even after being warned of dismissal, Plaintiff still has not disclosed claimed damages or names and addresses of medical providers.  For the reasons discussed above, the Magistrate Judge concluded that Plaintiff's "failure to do so is inexplicable" (Doc. #123, PAGEID 1418), and that Plaintiff's failure was at least partially his responsibility, rather than solely that of his attorney.  Plaintiff argues that, once he became aware of dismissal as a possible sanction in the February 5, 2024, Order, he "timely provided discovery responses and a response to the show cause portion of the order on February 20, 2024." (Doc. #126, PAGEID 1464).  Further, Plaintiff claims that his "counsel has continually supplemented information to Clayco and the other defendants as it has been received from Plaintiff." (*Id*. at PAGEID 1465).

Plaintiff's argument is unavailing, for several reasons. *First*, despite being given, on February 5, 2024, fourteen days "to respond fully and without objection to any and all [Clayco] discovery requests" (Order, Doc. #114, PAGEID 1327), Plaintiff concedes that he did not produce *any* additional discovery responses until February 20, 2024.  (Doc. #126, PAGEID 1456).  While submitting one day late would not normally constitute non-compliance, in its Order, the Court expressed its

18

frustration at Plaintiff's inability to comply with deadlines and warned that "*any* further evidence of delay . . . may result in dismissal of [Plaintiff's] claims." (Doc. #114, PAGEID 1326-27 (emphasis added)). Thus, the Court expressly stated that strict and total compliance with the fourteen-day deadline was required. Yet, even when faced with potential dismissal, Plaintiff did not submit discovery responses on time.

*Second*, the responses are still woefully incomplete. For example, as to ROG 17, Plaintiff claims that he provided, in his initial disclosures, a list of sources who treated him at Kettering Memorial Hospital ("KMH") in Kettering, Ohio, and the Centre for Neuro Skills ("CNS") in Bakersfield, California. (Doc. #126, PAGEID 1459, citing Doc. #121, PAGEID 1374). By Plaintiff's admission, his list of providers was comma-separated, rather than numbered, did not specify, beyond a generic statement of "physicians and staff" (*id.*), who treated him at KMH and CNS, and provided no information for the sources that are not directly employed by KMH or CNS—which, from what the Court can discern, is the vast majority of sources. Plaintiff's response, in effect, forced Clayco to go on a wild goose chase to identify the correct treating sources and attempt to obtain contact information— precisely what Clayco's request and Rule 33 in general were designed to prevent.

*Third*, Plaintiff has not satisfied the "business records" exception. FED.R.CIV.P.33(d). Plaintiff claims that he provided documents in response to ROG 17 in two ways: (1) A sequential Bates-range "and the response to request for production number one included a chart identifying the applicable time periods for

19

each BATES range"; and (2) "the same records in 174 individual [portable document ("PDF")] files that identified the date of service and the provider . . . . Those files also contain the address and contact information for the treating provider on the individual records." (Doc. #126, PAGEID 1460). This Court examined a nearly-identical issue several years ago, when "Defendants produced 343,000 pages of documents. According to Defendants, the documents [we]re produced by project in specific folders which allows for ease in comprehension." *United States v. Quebe*, No. 3:15-cv-294, 2017 WL 279539, *23 (S.D. Ohio Jan. 23, 2017) (Ovington, Mag. J.). The Court rejected the argument that such production satisfied Rule 33(d), stating that "it is difficult to imagine the number of folders that would be necessary to allow ease in comprehension or to significantly reduce the high burden imposed upon Plaintiff by this large number of documents or folders." *Id*. Similarly, it strains credulity that Clayco could go through 174 PDFs comprised of 4,500 pages and find the names and addresses of treating medical sources—some who were heretofore unknown to Clayco—as easily as could Plaintiff. Rule 33(d) is designed to be difficult to meet, because a party's obligation to respond fully and directly to interrogatories should not be easily excused. As Plaintiff did not meet his obligation, his answer to ROG 17 is still incomplete.

Plaintiff's other discovery responses at issue are also deficient or untimely. As to ROG 18, relating to lost wages and other income, Plaintiff claims that he complied by providing his W-2 statements both to Clayco and Plaintiff's expert,

and the expert used that information to calculate Plaintiff's damages. (Doc. #126, PAGEID 1461-62). Yet, Plaintiff's expert added a new category of damages for "lost household services," and those documents have not been provided to Clayco. As to lost wages, Plaintiff states that he does not remember his exact rate of pay on the date of the incident. (*Id.* at PAGEID 1461). Yet, he does not claim that he has, for example, asked Defendant IMI Materials Holdings Logistics, Inc. ("IMI"), his employer at the time, what his rate of pay was, even though that information was presumably in IMI's records. Plaintiff has not provided Clayco with the requested information necessary to evaluate Plaintiff's damages claim and the Court finds no reason to believe he will do so.

As to RFPD 16, which requested "[a]ny and all photographs, videotapes, notes, journals, diaries, or other documents which depict, describe, relate or refer to any adverse effect of any injuries Plaintiff suffered[.]" (Doc. #116-2, PAGEID 1358). Plaintiff provided numerous documents, but as the Magistrate Judge noted, Plaintiff did not specify which documents were produced. (Doc. #123, PAGEID 1420). Even now, Plaintiff can only state that the documents consisted of "Plaintiff's medical records and workers' compensation records since June 17, 2019 (Quinonez0001 to Quinonez02313, Quinonez2493 to Quinonez04588); an Occupational Health and Safety Administration investigation regarding the fall that caused Plaintiff's injuries (Quinonez02314 to Quinonez2492); and documents produced in the case that talk about the incident and Plaintiff's injuries." (Doc. #126, PAGEID 1462). The first category obliquely refers to Plaintiff's 4,500-page

document dump and provides no detail about which of those medical and workers' compensation records are responsive to the RFPD. The third category does not identify any document whatsoever. Plaintiff's response falls well short of the strict compliance ordered by this Court.

Finally, as to RFPD 19, Plaintiff argues that he and his counsel worked earnestly to provide Clayco with the release authorizations, first with the electronic signatures on March 6, 2024, and eventually the wet ink authorizations on April 29, 2024. (Doc. #126, PAGEID 1463-64 n.1). Yet, Plaintiff does not address why it took him an entire month after the Order—more than two weeks after the Court-imposed deadline—even to provide the electronic signatures. Nor does he explain why, after Clayco attempted to resolve the dispute informally through a March 6, 2024, email requesting the wet ink authorizations, it took him almost two months to provide them. (*Id.*). While Plaintiff states that he was out of the country before February 5, 2024, and was returning shortly after March 28, he never attempts to explain why he could not have filled out the wet ink authorizations before or during his travel.

In sum, despite the Court giving Plaintiff multiple chances to produce complete responses to ROGs 17 and 18 and RFPDs 16 and 19, and warning Plaintiff that failure to make complete responses would result in dismissal, Plaintiff has repeatedly refused to do so. Even if the Court were to consider Plaintiff's Objections to the Report as part of his discovery responses, they would still be incomplete. In sum, Plaintiff has engaged in contumacious conduct, *i.e.*, "behavior

that is perverse in resisting authority and stubbornly disobedient." *Carpenter*, 723 F.3d at 704-05 (internal quotation marks and citation omitted). Accordingly, the first *Mager* factor weighs in favor of dismissal.

### 2. Prejudice

Clayco's prejudice is apparent. It is undisputed that Plaintiff did not comply with his discovery response obligations from the time Clayco propounded the ROGs and RFPDs in late 2022 until the Court's February 5, 2024, Order, and that Clayco incurred significant time and financial costs in attempting to get Plaintiff to comply. Those costs continued after the Order, with Clayco's counsel having to undertake informal efforts to get "wet ink" authorizations on the medical records releases. Plaintiff did not provide the proper authorizations until at least April 29, 2024, meaning that Clayco could only begin the process of attempting to ascertain Plaintiff's true damages at that time. In a personal injury case, inability to assess damages is tantamount to an inability to defend at all. Clayco has also been prejudiced by having to do unnecessary investigative work to obtain the names of all treating medical sources. Plaintiff's belated responses failed to address the new subset of damages that his expert detailed in his report, meaning Clayco is still attempting to defend itself without having all relevant information. Thus, the second *Mager* factor weighs heavily in favor of dismissal.

### 3. Notice of Possible Dismissal

As discussed above, in the February 5, 2024, Order, the Court "specifically cautioned" Plaintiff for the first time that "any failure to fully and timely comply"

23

could result in dismissal with prejudice. (Doc. #114, PAGEID 1326-27). On April 4, 2024, the Court expressly warned Plaintiff that his claims against Clayco would be dismissed with prejudice if he did not show cause within fourteen days. (Doc. #120, PAGEID 1371). Plaintiff was on sufficient notice to satisfy the third *Mager* factor.

### 4. Lesser Sanctions

This Court previously imposed the lesser sanction of requiring Plaintiff to pay Clayco's attorney fees incurred with respect to Clayco's Motions to Compel (Doc. #120, PAGEID 1371), and twice explained that Plaintiff's "repeated and inexplicable" failures over nearly eighteen months to comply with deadlines and discovery requests left the Court to conclude that dismissal was the only suitable sanction, given the length and severity of Plaintiff's misconduct. Moreover, this is the rare instance in which dismissal with prejudice is not the harshest sanction the Court could impose. As discussed below, Plaintiff has numerous claims pending against multiple defendants. If, for example, the Court were to prohibit Plaintiff from claiming "lost household services" damages at all, FED.R.CIV.P. 37(b)(2)(A)(ii), then Plaintiff would be prejudiced not only as against Clayco, but as to all remaining Defendants. Given: (a) the above; (b) Clayco's past efforts, formal and informal, to obtain compliance from Plaintiff; and (c) the unfairness of requiring Clayco to participate further in light of Plaintiff's obstinance, the fourth *Mager* factor weighs in favor of dismissal.

The undersigned agrees with the Magistrate Judge that all four factors dictate dismissal with prejudice of Plaintiff's claims against Clayco. Accordingly, the Court adopts that portion of the Report and overrules Plaintiff's Objections thereto.

### B. Attorney Fees

The Magistrate Judge recommended "that the Court order Plaintiff, his attorney, or both to pay Clayco's reasonable expenses, including its attorney's fees, caused by Plaintiff's failures." (Doc. #123, PAGEID 1427, citing FED.R.CIV.P. 37(b)(2)(C)). Plaintiff argues that such an award "appears duplicative of the Court's previous order with which Plaintiff has already complied." (Doc. #126, PAGEID 1468). Plaintiff is wrong for two reasons. *First*, as discussed above, Plaintiff has complied with neither the February 5, 2024, Order regarding sanctions nor the April 4, 2024, Order to Show Cause. *Second*, since the date of the February 5, 2024, Order (for which Plaintiff previously paid to Clayco $3,000 in attorney fees), Clayco has incurred additional expenses, both in informal attempts to get Plaintiff to respond fully to its discovery requests and having to file responses to the show cause Order and the Report. (Docs. #122, 128). None of this work would have been necessary had Plaintiff fully responded, as ordered, by February 19, 2024. Moreover, the plain language of Rule 37 favors the assessment of attorney fees as a remedy for violating discovery orders: "the [C]ourt *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure,

25

unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED.R.CIV.P. 37 (b)(2)(C) (emphasis added).

For the reasons set forth above, there was no justification, much less a substantial one, for failing to comply with the Court's February and April 2024 Orders. Plaintiff attempts to frame an award as unjust by stating that he, a native Spanish speaker with a traumatic brain injury, and his counsel had worked diligently to provide the necessary documents. He further argues that it would be unjust because Clayco made only one additional filing, the April 25, 2024, reply to the April 4, 2024, Order, which was a mere rehashing of previous arguments. (Doc. #126, PAGEID 1468, citing Doc. #122). Yet, Plaintiff and his counsel were not diligent in producing responses and documents, and Clayco's counsel did significantly more than a single filing, work which would not have been necessary had Plaintiff complied with the Court's Orders. If Plaintiff thinks that the amount of time spent by Clayco's counsel is unjust, then he may challenge Clayco's lodestar calculation. But Plaintiff caused Clayco to incur costs and attorney fees, and Rule 37 requires this Court to tax those fees against Plaintiff in this circumstance.

Finally, Plaintiff's failures—submitting late and incomplete discovery responses and traveling outside the country without the ability to provide wet ink authorizations—are the fault of both Plaintiff and his counsel. As the Court may impose the payment obligation on "the disobedient party, the attorney advising that party, or both[,]" FED.R.CIV.P. 37 (b)(2)(C), the Court holds Plaintiff and his

26

counsel jointly and severally liable for the costs and fees incurred by Clayco.

Accordingly, Clayco shall submit an itemized calculation of costs and attorney fees

within twenty-eight days of this Entry. Plaintiff and his counsel may object to the

lodestar calculation within fourteen days of Clayco's submission; if they do not,

then they must pay Clayco that amount within twenty-eight days of the

submission.

## IV.    Remaining Claims.

With the dismissal of Plaintiff's claims against Clayco, the Court turns to

Plaintiff's claims against:

> 1.      IMI, Inc. – Only Claim I remains (Order, Doc. #78); proceedings
> against IMI are stayed pending IMI's bankruptcy proceedings
> (Amended Order, Doc. #109);
>
> 2.      Dematic Corp., Sergio Romero, Lorenzo Avila, Justin Parsons–
> Claims I and II remain in part, Claims III through VI remain *in toto*.
> (Entry, Doc. #98, PAGEID 1246);
>
> 3.      NP Dayton Building, NPD Mgmt., Northpoint Devel. ("NP
> Defendants"); and
>
> 4.      LaPorte Consultants

In addition, the following cross-claims and third-party claims remain

extant:

> 1.      NP Defendants against Clayco (Cross-Claim, Doc. #35);
>
> 2.      NP Defendants against Crocs, Inc. (Third-Party Complaint, Doc.
> #53, as amended at Doc. #57); and
>
> 3.      Crocs, against Dematic, Avila, Parsons, Romero (Cross-Claim,
> Doc. #63).

27

Also, Plaintiff's Complaint (Doc. #1, PAGEID 1-2) lists seven John Does, who, after nearly three years of litigation, have not even been identified, much less served. Plaintiff is ORDERED TO SHOW CAUSE within twenty-eight days of this Entry why all claims against John Does One through Seven should not be DISMISSED WITHOUT PREJUDICE for failure to effect service pursuant to FED.R.CIV.P. 4.

The remaining parties, with the exception of Defendant IMI, are ORDERED, within twenty-eight days of this Entry, to inform the Court via telephone or in writing as to whether they wish the undersigned to refer the case to a Magistrate Judge for Alternative Dispute Resolution ("ADR").[3]

## V. Conclusion

For the foregoing reasons, the Magistrate Judge's Report (Doc. #123) is ADOPTED and Plaintiff's Objections thereto (Doc. #126) are OVERRULED. Plaintiff's claims against Clayco are DISMISSED WITH PREJUDICE. Judgment shall ultimately enter in favor of Clayco and against Plaintiff. Clayco may, within twenty-eight days of Entry, submit an itemized list of costs and attorney fees incurred since the February 5, 2024, Order, for which Plaintiff and his counsel are jointly and severally liable. Plaintiff or his counsel may object to Clayco's calculation within fourteen days of submission. If neither Plaintiff nor counsel

---

[3] IMI may elect to participate in any mediation, but would bear the responsibility for how that participation may affect the automatic stay of proceedings against it.

objects within that time, then one or both of them must pay the full amount claimed by Clayco within twenty-eight days of Clayco's initial submission.

Further, Plaintiff is ORDERED TO SHOW CAUSE within twenty-eight days why his claims against John Does One through Seven should not be dismissed without prejudice for failure to serve. All parties except for IMI are ORDERED to notify the Court within twenty-eight days whether they are amenable to ADR before one of the Magistrate Judges.

IT IS SO ORDERED.

WALTER H. RICE, JUDGE
June 25, 2024                          UNITED STATES DISTRICT COURT

29